UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA, *ex rel.* BRUTUS TRADING, LLC,

                                Plaintiff,

-v-

STANDARD CHARTERED BANK, STANDARD CHARTERED PLC, and STANDARD CHARTERED TRADE SERVICES CORPORATION,

                                Defendants.

18 Civ. 11117 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

In this *qui tam* action brought on behalf of the United States, relator Brutus Trading, LLC ("Brutus"), has alleged that defendants Standard Chartered Bank, Standard Chartered PLC, and Standard Chartered Trade Services Corporation (together, "defendants" or "Standard Chartered"), after 2007, engaged in banking practices that violated U.S. sanctions against Iran. In a July 2020 decision, the Court dismissed Brutus's Complaint, finding that the Government had articulated multiple valid purposes served by dismissal, and that Brutus had not carried its burden to show that a dismissal would be "fraudulent, arbitrary and capricious, or illegal." Dkt. 62 ("July Op.") at 8–9. While Brutus's appeal was pending, it moved for an indicative ruling under Federal Rule of Civil Procedure 62.1 as to whether the Court, based on information allegedly leaked in post-judgment *Buzzfeed News* articles, would vacate the dismissal under Rule 60. Dkt. 67. Brutus argued that these news reports justified vacating the dismissal because they purportedly constituted newly discovered evidence exposing as untrue the Government's representations in filings in support of dismissal. In an October 2021 decision, the Court denied

the motion, finding that the materials Brutus cited did not contradict the Government's representations. Dkt. 97 ("October Op."). The Second Circuit affirmed both orders. Dkt. 100.

Brutus now moves to (1) set aside the Court's prior decisions pursuant to Rule 60(d)(3), based on the Government's allegedly having committed fraud on the Court by falsely denying that Standard Chartered did not conduct illegal transactions after 2007; and (2) appoint an independent expert, pursuant to Federal Rule of Evidence 706(a), to perform a forensic analysis on certain electronic transaction data files that Brutus previously provided the Government that it contends demonstrate Standard Chartered's illegal transactions with Iranian entities and foreign terrorist organizations. For the reasons that follow, the Court denies Brutus's motions.

## I. Factual Background

### A. Motion to Dismiss

The Court assumes familiarity with the case's facts and procedural history, as reviewed in the decisions cited above.

In brief, this matter stems from defendants' admitted practice, between 2001 and 2007, of deceptively facilitating U.S. dollar transactions by Iranian clients, in violation of U.S. sanctions and federal and New York banking regulations. *See* Dkt. 18 ("Second Amended Complaint," or "SAC") ¶¶ 27–32.[1] After a multi-year, multi-agency investigation, defendants entered into a 2012 Deferred Prosecution Agreement (the "2012 DPA") with the Department of Justice ("DOJ")—and related settlements or consent agreements with the Office of Foreign Asset Control ("OFAC"), the Federal Reserve, the New York County District Attorney's Office, and the New York Department of Financial Services ("DFS")—to resolve the matter. Under these,

---

[1] Except where specified, citations to the docket refer to the docket of 18 Civ. 11117 (PAE).

2

defendants paid hundreds of millions of dollars in fines and penalties. *See id.* The 2012 DPA was publicly announced on December 10, 2012. *Id.* ¶¶ 29, 31–32.

On December 17, 2012, Brutus, an entity formed by Julian Knight and Robert Marcellus for the purpose of pursuing this action, filed a *qui tam* action assigned to the Hon. Katherine B. Forrest. *Id.* ¶ 33; *see United States ex rel. Brutus Trading, LLC v. Standard Chartered Bank et al.*, No. 12 Civ. 9160 (KBF) ("*Brutus Trading I*"). Brutus alleged that, in negotiating the 2012 DPA, the defendants had misled the Government. *See Brutus Trading I*, Dkt. 36 ¶¶ 25–34. It alleged that defendants had continued to violate the sanctions after 2007, notwithstanding their representations that they had ceased to do so. *Id.*

In approximately August 2013, the Government informed Brutus's counsel that it intended to decline to intervene in the case. Dkt. 31 ("Nov. 2019 Gov't Mem.") at 8; Dkt. 32 ("Nov. 2019 Komar Decl.") ¶¶ 24–25. The Government kept the Complaint under seal, however, while it pursued a separate investigation of potential Iran sanctions violations by defendants (the "2013 Investigation"). Nov. 2019 Gov't Mem. at 8; Nov. 2019 Komar Decl. ¶ 31. On May 10, 2017, Judge Forrest unsealed the case, *Brutus Trading I*, Dkt. 19; on July 14, 2017, the Government notified Judge Forrest that it would not be intervening, *id.*, Dkt. 24. On September 19, 2017, Brutus dismissed its Complaint without prejudice. *Id.*, Dkt. 35.

On November 29, 2018, Brutus re-filed its Complaint, *see* SAC ¶ 37, which was assigned to this Court after Judge Forrest's resignation. Dkt. 1. In March 2019, the Government again declined to intervene, Nov. 2019 Gov't Mem. at 12; the case was later unsealed, Dkt. 3. On April 9, 2019, the DOJ announced a new DPA (the "2019 DPA") with defendants—and OFAC, the Federal Reserve, and DFS announced new settlement or consent agreements with

3

defendants—stemming from the results of the 2013 Investigation. *See* SAC ¶¶ 60–61; *see also* Dkt. 35 ¶¶ 11–16; Dkt. 58 ¶¶ 13–14.

On July 19, 2019, Brutus filed its First Amended Complaint. Dkt. 15 ("FAC"). It added, *inter alia*, the allegation that the 2019 DPA, like the 2012 DPA, "did not address the broader course of conduct by [defendants] in violation of the Iran sanctions" that Brutus's Complaint alleged. *Id.* ¶ 62. The FAC also advanced a new theory of recovery based on alleged reverse false claims, *see* 31 U.S.C. § 3729(a)(l)(G), by defendants, FAC ¶¶ 63–65.

On September 23, 2019, Brutus filed the SAC. It added allegations that it had been the initial source of the information leading to the 2019 DPA and related agreements, *see* SAC ¶¶ 64–65, and was thus entitled to a share of the Government's recovery from those agreements, *id.* ¶ 69.

On November 21, 2019, the Government filed a motion to dismiss the SAC, Dkt. 30, a supporting memorandum of law, Dkt. 31, and declarations, Dkts. 32–35. On January 10, 2020, Brutus filed a memorandum of law in opposition, Dkts. 48–49, with attached exhibits and declarations. On February 28, 2020, the Government filed a reply, Dkt. 54, and associated exhibits and affirmations, Dkts. 55–58. On March 13, 2020, Brutus filed a sur-reply, Dkt. 61, with attached exhibits.

On July 2, 2020, the Court granted the Government's motion to dismiss Brutus's *qui tam* Complaint. The Court found that the Government had proffered at least two valid reasons for dismissal of the suit, and that Brutus had not carried its burden to show that dismissal would be fraudulent, arbitrary and capricious, or illegal. *See* July Op. at 8–9. On August 3, 2020, Brutus filed a notice of appeal. Dkt. 66.

4

### B. Indicative Motion to Vacate

On October 27, 2020, Brutus filed a motion to reopen the case, Dkt. 67, and a brief in support of its motion for an indicative ruling that, had the Court retained jurisdiction, it would have vacated the dismissal, Dkt. 68. The basis for the motion was a series of *Buzzfeed News* reports, which Brutus claimed constituted newly discovered evidence that exposed as untrue the Government's representations in support of dismissal. *See* Dkt. 68 at 1–2, 4–9. On October 13, 2021, the Court denied the motion, finding that the new materials did not contradict the Government's representations.

On November 3, 2023, the Second Circuit affirmed the dismissal and the order denying the motion to reopen the case. Dkt. 100.

### C. Instant Motions

On May 31, 2024, Brutus filed the instant motion to vacate the judgment, Dkt. 101, a supporting memorandum of law, Dkt. 102 ("Brutus Br."), and associated exhibits and declarations, Dkts. 103–05. On July 9, 2024, Brutus filed the instant motion to appoint an independent expert, Dkt. 122, a supporting memorandum of law, Dkt. 123, and declarations, Dkts. 124–26. On September 6, 2024, the Government filed its opposition to both motions. Dkt. 137. On September 27, 2024, Brutus filed a reply. Dkt. 142.

As in its first attempt to set aside the judgment, Brutus in its second motion to vacate argues that the Government committed a fraud upon the Court insofar as it failed to uncover (or if uncovered, disclose) that Standard Chartered had engaged in criminal conduct later than previously revealed. Brutus Br. at 14–16. Brutus argues that, with the assistance of forensic data analysis performed by David J. Scantling, *see* Dkt. 104, it has uncovered or "decloaked" hidden data, which it terms newly discovered evidence that it claims expose as untrue the Government's

5

representations in support of dismissal. Brutus Br. at 1–2, 9–12. In connection with this motion, Brutus has also moved to appoint an independent expert to perform a more thorough forensic analysis than that performed by Scantling of the data Brutus provided to the Government in 2012 and 2013. Dkt. 122.

## II. Motion to Vacate Pursuant to Rule 60(d)(3)

Rule 60(d) allows the court to "entertain an independent action to relieve a party from a judgment," Fed. R. Civ P. 60(d)(1), or, in the provision upon which Brutus relies here, to "set aside a judgment for fraud on the court," Fed. R. Civ. P. 60(d)(3). "A party seeking relief under Rule 60(d)(3) bears a formidable burden." *United States v. Ohle*, No. 8 Cr. 1109, 2015 WL 9647534, at *1 (S.D.N.Y. Dec. 30, 2015). "Rule 60(d) actions are warranted only when necessary 'to prevent a grave miscarriage of justice.'" *LinkCo, Inc. v. Naoyuki Akikusa*, 367 F. App'x 180, 182 (2d Cir. 2010) (quoting *United States v. Beggerly*, 524 U.S. 38, 47 (1998)). That standard "is narrower in scope than that which is sufficient for relief" under Rule 60(b)(3), which also provides for relief from judgment in the context of fraud. *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995) (citing *Gleason v. Jandrucko*, 860 F.2d 556, 558 (2d Cir. 1988)).[2] To meet the Rule's "stringent and narrow" requirements for relief, the movant must show, by clear and convincing evidence, that the fraud "seriously affects the integrity of the normal process of adjudication," and that "the fraud, misrepresentation or conduct . . . actually deceived the court." *Anderson*, 2012 WL 4513410, at *4 (cleaned up). In other words, fraud under Rule 60(d) entails conduct "which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court." *Hadges*, 48 F.3d at 1325.

---

[2] Unlike Rule 60(b)(3), however, Rule 60(d) does not have a prescribed limitations period. *Anderson v. New York*, 7 Civ. 9599, 2012 WL 4513410, at *5 (S.D.N.Y. Oct. 2, 2012).

6

The Court has previously found Brutus's allegations of fraud threadbare. The Court so finds again. Brutus claims that the data it has recently "decloaked"[3]—derived from spreadsheets it provided to the Government in 2012 and 2013, more than a decade ago—reveal governmental fraud on the Court. Brutus Br. at 1–2. Brutus claims that this ostensibly newly discovered evidence exposes as untrue the Government's representation in support of dismissal that Standard Chartered had not engaged in sanctions-violating conduct after 2007. *Id.*

For several independent reasons, Brutus's showing does not come close to meeting its "formidable burden" to secure Rule 60(d)(3) relief.

First, as earlier, *see* July Op. at 6–9; October Op. at 14–15, Brutus has not given the Court a basis on which to find that the Government made a false representation to the Court. Brutus claims that the Government misrepresented that it had conducted a comprehensive investigation and/or that Brutus's factual allegations were unsupported. Brutus Br. at 14. However, the Government has repeatedly detailed its thorough investigation of Standard Chartered and the reasons it found that Brutus's evidence, including the spreadsheets that Brutus claims to have "decloaked," do not substantiate its allegations. *See* July Op. at 6 (describing investigative record). And Brutus concedes that the Government has already "re-reviewed" the provided data, "including all 'hidden' information . . . and did not see any additional material information that would have been relevant to [the Government's] investigation." Brutus Br. at 15 (quoting Dkt. 55 ¶ 5 n.3).

---

[3] Brutus alleges that the "decloaked" data includes "millions of [Standard Chartered] transactions that were hidden" within the electronic spreadsheets it collected from defendants and provided to the Government in 2012 and 2013. Brutus Br. at 1, 9. The data comprises approximately 200 spreadsheets purportedly reflecting the raw information of thousands of third-party customers.

7

The Court has not been given any basis to discredit these representations. As Judge Furman put the point in similarly dismissing a relator's claim:

> The Government's memoranda reveal, and the Court has no basis to doubt, that the Government undertook a lengthy, costly, and substantial investigation into [relator]'s claims that spanned several years and multiple offices and agencies. . . . [Relator]'s subjective disagreement with the Government's investigative strategy and ultimate decision does not provide the Court with a basis to second-guess the Government's decision to dismiss the case.

*United States ex rel. Borzilleri v. AbbVie, Inc.*, No. 15 Civ. 7881, 2019 WL 3203000, at *2 (S.D.N.Y. July 16, 2019) (internal citations omitted). Still less does Brutus's disagreement with the Government's factual conclusions supply a basis to determine that the Government acted to deceive or with conscious awareness that its findings were incorrect.

Second, Brutus is wrong to claim it has been denied an opportunity to pursue its allegation of fraud upon the Court by the Government. *See* Brutus Br. at 1 (claiming to have been denied a "meaningful opportunity to challenge the Government's false statements"). On the contrary, Brutus has been given ample opportunity to pursue that allegation. Its arguments to that effect, including in its earlier bid to set aside the judgment based on the *Buzzfeed News* articles, have simply failed, *see* Dkt. 49 at 5; Dkt. 76 at 2–6, as Brutus has not shown conduct approaching fraud at all, let alone "fraud which seriously affects the integrity of the normal process of adjudication." *Gleason*, 860 F.2d at 559 (citing *Kupferman v. Consol. Rsch. & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972) and 7 J. Moore, *Federal Practice* ¶ 60.33, at 360 (2d ed. 1987)). And "courts are not prevented from impartially and fairly adjudicating a case where the plaintiff had an adequate opportunity to redress the alleged fraud." *Mazzei v. The Money Store*, 62 F.4th 88, 93 (2d Cir. 2023) (citation omitted).

To the extent Brutus's theory turns on its recent alleged deconstruction of the data files that it produced to the Government, its claim cannot be taken be seriously. Brutus has had

8

possession of these materials for years. Brutus, not the Government or the Court, is responsible for its decision to wait until recently to pursue the "decloaking" of the data within these files on which it now relies. *See Mazzei*, 62 F.4th at 94 (affirming dismissal of fraud on court where relator had reasonable opportunity to uncover the alleged fraud during the underlying action); *see also Gleason*, 860 F.2d at 560 (aggrieved party "must be able to show that there was no 'opportunity to have the ground now relied upon to set aside the judgment fully litigated in the original action.'") (quoting *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 n.2 (2d Cir. 1972)); *Marco Destin, Inc. v. Levy*, 690 F. Supp. 3d 182, 190–91 (S.D.N.Y. 2023), *aff'd*, 111 F.4th 214 (2d Cir. 2024) (denying relief where plaintiff "had every opportunity in the Underlying Action to use the tools available in the adversarial process" to uncover the truth, notwithstanding that its adversary lied under oath and "purposefully withheld" key evidence).

A party seeking Rule 60(d)(3) relief "must prove, by clear and convincing evidence, that the defendant interfered with the judicial system's ability to adjudicate impartially and that the acts of the defendant must have been of such a nature as to have prevented the plaintiff from fully and fairly presenting a case or defense." *Mazzei*, 62 F.4th at 93–94. Brutus has not come remotely close to showing such here. The Court thus denies its latest bid for such relief.

### III. Expert Appointment Pursuant to Rule 706(a)

Under Federal Rule of Evidence 706(a), a court may, on its own motion or on a motion by any party, "appoint any expert that the parties agree on and any of its own choosing." Fed. R. Evid. 706(a). "The determination to appoint an expert rests solely in the Court's discretion and is to be informed by such factors as the complexity of the matters to be determined and the Court's need for a neutral, expert view." *Rowell v. City of New York*, No. 16 Civ. 6598, 2017 WL 11569520, at *1 (S.D.N.Y. Aug. 29, 2017) (quoting *Pabon v. Goord*, No. 99 Civ. 5869,

9

2001 WL 856601, at *1 (S.D.N.Y. July 30, 2001)). Rule 706 "is intended to aid the trier-of-fact in its understanding and assessment of technical or scientific issues, not to further the 'partisan interests of any party.'" *Gioconda Law Grp. PLLC v. Kenzie*, No. 12 Civ. 4919, 2013 WL 2389791, at *2 (S.D.N.Y. May 31, 2013) (quoting *Benitez v. Mailloux*, 5 Civ. 1160, 2007 WL 836873, at *1 (N.D.N.Y. Mar. 15, 2007)).

Because Brutus has not demonstrated that the Court's decision to dismiss its claims was the product of a fraud on the Court or anything close, the Court denies Brutus's motion to vacate. There is no basis to pursue, let alone subsidize, additional discovery. Under these circumstances, the appointment of an independent expert is unwarranted. Court appointments of experts are relatively rare. *See In re Joint E. & S. Districts Asbestos Litig.*, 830 F. Supp. 686, 693 (E.D.N.Y. 1993); Fed. R. Evid. 706, Advisory Comm. Note ("experience indicates that actual appointment is a relatively infrequent occurrence"). And their appointment is to be informed by factors such as the complexity of the case and the Court's need for a neutral, expert view. *Rowell*, 2017 WL 11569520, at *1. Experts appointed pursuant to Rule 706(a) are meant to aid the Court in its understanding of technical issues, not to further a party's interests. *Gioconda Law Grp. PLLC*, 2013 WL 2389791, at *2. Here, however, there are no open issues to be resolved, much less complex ones. And the Court's review of Brutus's allegations is complete.

Indeed, even if open factual issues remained—and they do not—Brutus has already utilized the services of a "highly accomplished intelligence analyst and forensic investigator who specializes in global terror financing" to discover the "millions of [Standard Chartered] transactions that were hidden within the Brutus Data." Brutus Br. at 9. There is no reason to believe that an independent expert would uncover information inaccessible to Brutus. The Court therefore denies Brutus's motion to appoint an independent expert.

10

## CONCLUSION

For the foregoing reasons, the Court denies Brutus's motion to vacate and motion to appoint an independent expert.

The Court also denies the motion by non-party Times Media Limited ("Times Media") to unseal Brutus's Exhibit K.[4]

The Clerk of Court is respectfully directed to terminate the motions pending at Dockets 101, 122, and 144.

SO ORDERED.

                                                     *Paul A. Engelmayer*
                                                 PAUL A. ENGELMAYER
                                                 United States District Judge

Dated: November 13, 2024
       New York, New York

---

[4] In support of Brutus's first motion to vacate, its counsel Patrick McSweeney, Esq., submitted a declaration and accompanying exhibits, including Exhibit K, which he described as "true and correct electronic copies of the cloaked and decloaked data files that Brutus gave to the Government in 2012 and 2013." Dkt. 103. Brutus, in later letter motions, sought leave to file the exhibit under seal "[t]o protect the economic privacy of innocent third parties," because the data "contain[ed] sensitive data that is not relevant to these proceedings." Dkt. 106, *see* Dkt. 108. In light of the third-party privacy interests at stake, the Court granted Brutus's request to file Exhibit K under seal. Dkt. 109. On October 7, 2024, Times Media filed a letter-motion seeking the unsealing of Exhibit K. Dkt. 144. Non-parties Jewish Insider and WWBT 12 On Your Side joined Times Media's motion. Dkts. 155–56. Standard Chartered opposed the motion, noting that the data was collected without its consent, and that Exhibit K contained "approximately 200 spreadsheets" with "raw data including, among other things, customer names, contact information, transaction dates, trade volume and revenue information." Dkt. 151 at 1. Standard Chartered also raised concerns over the "purported bank records of dubious accuracy and origin," given Brutus's admissions to manipulating the data in connection with its "decloaking" process. *Id.* at 3. The Government did not take a position. Dkt. 149. As before, the Court finds that Exhibit K is properly maintained under seal, to protect the privacy interests of unrelated third parties. The Court thus denies Times Media's motion to unseal Exhibit K.

11