# 25-0115-cv

## United States Court of Appeals

*for the*

## Second Circuit

---

BRUTUS TRADING, LLC,

*Plaintiff-Appellant,*

ABC,

*Plaintiff,*

– v. –

STANDARD CHARTERED BANK, STANDARD CHARTERED PLC, STANDARD CHARTERED TRADE SERVICES CORPORATION,

*Defendants-Appellees,*

UNITED STATES OF AMERICA,

*Interested Party-Appellee,*

DEF,

*Defendant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

ANTONIO J. PEREZ-MARQUES
DAVIS POLK & WARDWELL LLP
*Attorneys for Defendants-Appellees*
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

CP COUNSEL PRESS   (800) 4-APPEAL • (383324)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Standard Chartered Trade Services Corporation, Standard Chartered Bank, and Standard Chartered PLC, certify that Standard Chartered Trade Services Corporation is a wholly owned subsidiary of Standard Chartered Holdings, Inc., which is a wholly owned subsidiary of Standard Chartered Bank.  Standard Chartered Bank is a wholly owned subsidiary of Standard Chartered Holdings Limited, which is a wholly owned subsidiary of Standard Chartered PLC.  Standard Chartered PLC has no parent corporation and no publicly held company owns 10% or more of Standard Chartered PLC's shares.  However, Temasek Holdings (Private) Limited, a Singaporean state-owned investment company, has disclosed capital ownership of more than 10% of the stock of Standard Chartered PLC.

# TABLE OF CONTENTS

<u>Page(s)</u>

COUNTERSTATEMENT OF JURISDICTION ......................................................1

COUNTERSTATEMENT OF ISSUES ...................................................................1

COUNTERSTATEMENT OF THE CASE................................................................2

    I.    Factual Background.................................................................................4

    II.    Procedural History.................................................................................4

SUMMARY OF ARGUMENT ...............................................................................9

ARGUMENT ........................................................................................................10

    I.    Brutus Lacks Article III Standing to Appeal the District Court's
           Ruling on the Unsealing Motion. ......................................................10

    II.    The District Court Did Not Abuse Its Discretion in Keeping
           Exhibit K Under Seal...........................................................................14

           A.    Exhibit K is not a Judicial Document. .........................................15

           B.    The Weight of Any Presumption of Public Access to Exhibit
                   K is, at Most, Minimal. .................................................................19

           C.    The District Court Did Not Abuse Its Discretion in
                   Concluding that Privacy Considerations of Non-Parties
                   Warranted the Seal. ......................................................................23

CONCLUSION ....................................................................................................28

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

Bernstein v. Bernstein Litowitz Berger & Grossmann LLP,
    814 F.3d 132 (2d Cir. 2016) ................................................................ 14

Brown v. Maxwell,
    929 F.3d 41 (2d Cir. 2019) ................................................... 15, 21, 27

Brutus Trading, LLC v. Standard Chartered Bank ("Brutus III"),
    2023 WL 5344973 (2d Cir. Aug. 21, 2023) ......................................... 5

Brutus Trading, LLC v. Standard Chartered Bank,
    144 S. Ct. 1011 (2024) ......................................................................... 5

Buon v. Spindler,
    65 F.4th 64 (2d Cir. 2023) ........................................................... 14, 23

Concerned Citizens of Cohocton Valley, Inc. v. N.Y. State Dep't of Env't
Conservation,
    127 F.3d 201 (2d Cir. 1997) ............................................................... 14

Ernst v. Child & Youth Servs. Of Chester Cnty.,
    108 F.3d 486 (3d Cir. 1997) ............................................................... 11

Grae v. Corr. Corp. of Am.,
    57 F.4th 567 (6th Cir. 2023) ......................................................... 11, 12

Harty v. W. Point Realty, Inc.,
    28 F.4th 435 (2d Cir. 2022) ............................................................... 13

Hollingsworth v. Perry,
    570 U.S. 693 (2013) ............................................................... 9, 10, 13

Lugosch v. Pyramid Co. of Onondaga,
    435 F.3d 110 (2d Cir. 2006) .................................................. 15, 21, 22, 23

Maragh v. Roosevelt Island Operating Corp.,
    No. 21-2129, 2022 WL 14199384 (2d Cir. Oct. 25, 2022) ......................... 19, 20

Mirlis v. Greer,
    952 F.3d 51 (2d Cir. 2020) ............................................................. 14-15

Newsday LLC v. Cnty. of Nassau,
    730 F.3d 156 (2d Cir. 2013) ................................................... 17, 18-19

Nixon v. Warner Commc'ns, Inc.,
    435 U.S. 589 (1978) ....................................................................... 27

Phillips v. Fashion Inst. of Tech.,
    2024 WL 4007929 (S.D.N.Y. Aug. 30, 2024) ................................. 24

Rosenfeld v. Montgomery Cnty. Pub. Schs.,
    25 F. App'x 123 (4th Cir. 2001) ..................................................... 12

Schlesinger v. Reservists Comm. to Stop the War,
    418 U.S. 208 (1974) ....................................................................... 11

SEC v. Telegram Grp., Inc.,
    2020 WL 3264264 (S.D.N.Y. June 17, 2020) ............................. 24-25

Strauss v. Credit Lyonnais, S.A.,
    2011 WL 4736359 (E.D.N.Y. Oct. 6, 2011) ................................... 24

Tachiona v. United States,
    386 F.3d 205 (2d Cir. 2004) ........................................................... 11

TransUnion LLC v. Ramirez,
    594 U.S. 413 (2021) ....................................................................... 12

United States ex rel. Brutus Trading, LLC v. Standard Chartered Bank ("Brutus I"),
    2020 WL 3619050 (S.D.N.Y. July 2, 2020) .................................. 4, 5

United States ex rel. Brutus Trading, LLC v. Standard Chartered Bank ("Brutus II"),
    2021 WL 4772142 (S.D.N.Y. Oct. 13, 2021) ................................... 5

United States ex rel. Brutus Trading, LLC v. Standard Chartered Bank ("Brutus IV"),
    2024 WL 4766997 (S.D.N.Y. Nov. 13, 2024) ......................... *passim*

United States ex rel. Polansky v. Exec. Health Res., Inc.,
    599 U.S. 419 (2023) ....................................................................... 16

United States v. Amodeo ("Amodeo I"),
    44 F.3d 141 (2d Cir. 1995) ................................................................ 15, 19, 27

United States v. Amodeo ("Amodeo II"),
    71 F.3d 1044 (2d Cir. 1995) ........................................................ 23, 25, 26-27

United States v. Hickey,
    185 F.3d 1064 (9th Cir. 1999) ................................................................ 12

United States v. Holy Land Found. for Relief & Dev.,
    624 F.3d 685 (5th Cir. 2010) ................................................................ 12

United States v. Pickard,
    733 F.3d 1297 (10th Cir. 2013) ................................................................ 12

## STATUTES & RULES

28 U.S.C. § 1331 ................................................................ 1

31 U.S.C. § 3730(c)(2)(A) ................................................................ 16

31 U.S.C. § 3732(a) ................................................................ 1

Fed. R. Civ. P. 41(a) ................................................................ 16, 19

Fed. R. Civ. P. 60 ................................................................ *passim*

Fed. R. Civ. P. 62.1 ................................................................ 5

U.S. Const. art. III ................................................................ *passim*

iv

Appellees Standard Chartered Trade Services Corporation, Standard Chartered Bank, and Standard Chartered PLC (together, "SCB") join the government in urging this Court to affirm the district court's rulings below. SCB further files this brief in opposition to the appeal of the denial of the motion to unseal.

## COUNTERSTATEMENT OF JURISDICTION

The district court properly exercised jurisdiction pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a), as the claims that plaintiff-appellant Brutus Trading, LLC ("Brutus") asserted were under the False Claims Act.

As explained further in this brief, this Court lacks jurisdiction over the appeal of the district court's denial of a third-party's motion to unseal an exhibit because Brutus lacks standing under Article III of the United States Constitution to appeal that decision.

## COUNTERSTATEMENT OF ISSUES

(1)     Whether Brutus has Article III standing to appeal the district court's maintenance of a seal on an exhibit, where Brutus's appeal articulates no personal and individual injury arising from the district court's decision on sealing, Brutus possesses a complete, unredacted copy of the exhibit, and the exhibit was sealed on Brutus's motion.

(2)     Whether the district court abused its discretion in denying the motion to unseal Exhibit K to Brutus's Rule 60 motion, which consisted of a hard drive containing 3.5 gigabytes of millions of banking transactions involving thousands of non-parties, where the contents of Exhibit K were not relevant to or would not reasonably have the tendency to influence the district court's analysis of the question presented on the Rule 60 motion (namely, whether the government committed a fraud on the district court); where the district court did not rely on the contents of Exhibit K; and where the district court maintained the seal to protect the privacy interests of unrelated non-parties.

## COUNTERSTATEMENT OF THE CASE

In the district court below, Brutus, a *qui tam* relator, filed a second post-judgment motion pursuant to Federal Rule of Civil Procedure 60(d)(3) to set aside the court's July 2020 grant of the government's motion to dismiss the *qui tam* complaint.  In its Rule 60 motion, Brutus alleged that the government had committed a fraud on the court by making false statements about the government's underlying investigation in its submissions on the motion to dismiss.  Attached to Brutus's Rule 60 opening brief was an exhibit labeled Exhibit K—which was not a single document, but a 3.5-gigabyte hard drive containing nearly 200 spreadsheets with information on millions of banking transactions carried out by thousands of non-parties.  Brutus did not reference Exhibit K at all in its opening brief.  (<u>See</u>

2

generally Dkt. 102.[1])  Nonetheless, Brutus filed the Exhibit under seal and moved to seal it in order to "protect the economic privacy of innocent third parties," noting that it "contains sensitive data that is not relevant to these proceedings." Additionally, Brutus noted that because Exhibit K was "exceptionally voluminous," Brutus "cannot upload it onto PACER," and asked for leave to file an external drive with the Clerk's office.  The district court granted both requests.

Four months later, a third-party organization moved to unseal Exhibit K, prompting Brutus to seek leave to "join" the motion to unseal.  When the district court denied Brutus's Rule 60 motion soon thereafter, stating that Brutus had "not come remotely close to" meeting its burden for relief, it also denied the motion to unseal after articulating and considering the arguments from all parties and explaining its reasoned basis for maintaining the seal.

The third-party organization did not appeal the denial of the motion to unseal; instead, Brutus has appealed the denial.  But Brutus has not articulated any particular or individual injury from the district court's maintenance of the seal, and therefore lacks Article III standing.  And even if Brutus did have standing, the district court did not abuse its discretion in denying the motion to unseal: the

---

[1] The docket numbers of documents filed with the district court in the proceeding below, captioned as United States ex rel. Brutus Trading, LLC v. Standard Chartered Bank, No. 18 Civ. 11117 (PAE) (S.D.N.Y.), that are not included in the parties' appendices are cited to herein as "Dkt. __."

contents of Exhibit K were not relevant to the court's analysis of whether the government had made misrepresentations to the court about its investigation; the district court did not rely on the contents of Exhibit K; and the district court properly maintained the seal to protect the privacy interests of unrelated third parties.

## I. Factual Background

This action arises from an investigation into SCB by multiple government agencies that culminated in a Deferred Prosecution Agreement ("DPA") in 2012. See United States ex rel. Brutus Trading, LLC v. Standard Chartered Bank ("Brutus I"), 2020 WL 3619050, at *1 (S.D.N.Y. Jul. 2, 2020). In numerous filings over the winding course of this litigation, Brutus has argued that in 2012 and 2013, it provided the government with, among other things, nearly 200 spreadsheets from SCB that purportedly showed that SCB had misled the government while negotiating the 2012 DPA as to the true scope of alleged sanctions violations. The government has consistently and repeatedly stated that it investigated these allegations fully, but found them unsupported and without merit. (See, e.g., Dkt. 73 at 2-3; Dkt. 137 at 4-6.)

## II. Procedural History

Brutus's first *qui tam* action was filed in 2012, following the DPA. The government declined to intervene in that action, and years later Brutus dismissed

4

that action without prejudice. See United States ex rel. Brutus Trading, LLC v. Standard Chartered Bank, No. 12 Civ. 9160 (KBF) (S.D.N.Y.), Dkt. 35. Brutus then filed a new *qui tam* action in 2018, in which the government declined to intervene for a second time. In 2019, the government moved to dismiss the complaint, which the district court granted. Brutus I, 2020 WL 3619050, at *2.

Brutus appealed the court's grant of the government's motion to dismiss. While that appeal was pending, Brutus moved under Rule 62.1 before the district court for an indicative ruling as to whether the court would grant it relief from the judgment under Rule 60. That motion was denied by the district court. United States ex rel. Brutus Trading, LLC v. Standard Chartered Bank ("Brutus II"), 2021 WL 4772142, at *1 (S.D.N.Y. Oct. 13, 2021). This Court then affirmed the district court's dismissal of the complaint and the denial of Brutus's Rule 62.1 motion. Brutus Trading, LLC v. Standard Chartered Bank ("Brutus III"), 2023 WL 5344973, at *1 (2d Cir. Aug. 21, 2023). Subsequently, this Court denied Brutus's request for *en banc* review, Brutus Trading, LLC v. Standard Chartered Bank, No. 20-2578 (2d Cir. Oct. 27, 2023), and the Supreme Court denied Brutus's petition for a writ of certiorari, Brutus Trading, LLC v. Standard Chartered Bank, 144 S. Ct. 1011 (2024) (No. 23-813).

Brutus filed its second post-judgment motion in May 2024 under Rule 60(d)(3), which permits a court to set aside a judgment for fraud on the court.

5

(Joint Appendix ("JA") 35-36.)  Brutus alleged that the government had committed a "colossal fraud" on the court when the government told the court in support of its earlier motion to dismiss that it had closely examined Brutus's many spreadsheets and did not find evidence that SCB had misled the government in negotiating the 2012 DPA.  (Dkt. 102 at 3-9, 14.)  Brutus argued that the existence of hidden, or "cloaked," data in the spreadsheets, in the form of Microsoft Excel pivot tables, showed that the government "lied that it had conducted a 'lengthy, costly, and substantial investigation' into Brutus's claims only to find them 'meritless.'  Or, the Government was fully aware of the decloaked transactions and simply lied to conceal them."  (Dkt. 102 at 14 (internal citation omitted).)  The government did not dispute that certain data in Brutus's spreadsheets was located in pivot tables, but argued that Brutus's spreadsheets, including the purportedly "decloaked" data, did not substantiate the allegations Brutus made in its *qui tam* complaint and did not demonstrate that the government had committed a fraud on the court.  (Dkt. No. 137 at 12, 15-19.)

Brutus filed a number of exhibits along with its Rule 60 motion, including, as Exhibit K, a hard drive with "numerous electronic spreadsheets that record millions of banking transactions executed" by SCB.  (JA 239.)  Brutus characterized Exhibit K as "exceptionally voluminous" and told the court that it consequently "cannot upload it onto PACER."  (Id.)  At Brutus's request, and with

leave of the district court, it filed Exhibit K as an external drive with the Clerk's office.  (JA 244-45.)  Brutus also noted that Exhibit K "contains sensitive data that is not relevant to these proceedings," and moved to file it under seal to "protect the economic privacy of innocent third parties" (JA 239), which the court granted (JA 245).[2]

Four months later, while Brutus's motion was *sub judice*, a third-party news organization moved to unseal Exhibit K, a motion that was later joined by two other news organizations.  (JA 333-35; 353-54.)  The government took no position and SCB opposed the motion.  (JA 342, 346-49.)  Brutus requested leave to "join" the third parties' motion to unseal.  (JA 343-45.)

In November 2024, the district court denied Brutus's Rule 60 motion.  As part of that decision, the district court also denied the third parties' motion to unseal, stating that:

> In support of Brutus's first motion to vacate, its counsel Patrick McSweeney, Esq., submitted a declaration and accompanying exhibits, including Exhibit K, which he described as "true and correct electronic copies of the cloaked and decloaked data files that Brutus gave to the Government in 2012 and 2013." Dkt. 103. Brutus, in later letter motions, sought leave to file the exhibit under seal "[t]o protect the economic privacy of innocent third parties," because the data "contain[ed] sensitive data that is not relevant to these proceedings." Dkt. 106, see Dkt. 108. In light of the third-party privacy interests at stake, the Court granted Brutus's request to file Exhibit K under seal.

---

[2] Brutus's initial sealing request erroneously referred to the exhibit as Exhibit J (JA 239); Brutus later clarified that it meant Exhibit K (JA 242).

Dkt. 109. On October 7, 2024, Times Media filed a letter-motion seeking the unsealing of Exhibit K. Dkt. 144. Non-parties Jewish Insider and WWBT 12 On Your Side joined Times Media's motion. Dkts. 155-56. Standard Chartered opposed the motion, noting that the data was collected without its consent, and that Exhibit K contained "approximately 200 spreadsheets" with "raw data including, among other things, customer names, contact information, transaction dates, trade volume and revenue information." Dkt. 151 at 1. Standard Chartered also raised concerns over the "purported bank records of dubious accuracy and origin," given Brutus's admissions to manipulating the data in connection with its "decloaking" process. Id. at 3. The Government did not take a position. Dkt. 149. As before, the Court finds that Exhibit K is properly maintained under seal, to protect the privacy interests of unrelated third parties. The Court thus denies Times Media's motion to unseal Exhibit K.

United States ex rel. Brutus Trading, LLC v. Standard Chartered Bank ("Brutus IV"), 2024 WL 4766997, at *6 n.4 (S.D.N.Y. Nov. 13, 2024).

Brutus now appeals the district court's ruling on its Rule 60 motion and the motion to unseal Exhibit K. As to the motion to unseal Exhibit K, Brutus contends that the district court failed to engage in the required legal analysis and reached the wrong conclusion because the general public has a presumptive right to access judicial documents and because countervailing considerations of non-parties' privacy interests did not overcome the public's presumptive access. (App. Br. at 42-48.) None of the third-party news organizations that sought unsealing in the district court have appealed the motion to unseal Exhibit K.

## SUMMARY OF ARGUMENT

This Court should dismiss Brutus's appeal of the district court's denial of the motion to unseal Exhibit K for lack of standing, or, in the alternative, affirm the district court's order.

*First*, Brutus does not have Article III standing to appeal the district court's order to maintain Exhibit K under seal. Brutus argues only that Exhibit K should be unsealed in the interest of the public, alleging that the district court's decision "flouts the important constitutional and common law presumptions of public access to judicial documents." (App. Br. at 42.) But Brutus has not articulated any "personal and individual" injury caused by the district court's decision, and therefore lacks Article III standing. See Hollingsworth v. Perry, 570 U.S. 693, 705 (2013). Indeed, having long had full access to Exhibit K, Brutus is in no way harmed by the district court's ruling and does not share any injury with the public.

*Second*, the district court did not abuse its discretion in keeping Exhibit K under seal. A filing must be considered a judicial document for a presumption of public access to attach, but Exhibit K was not a judicial document because its contents were not legally relevant to the question of whether the government had committed a fraud on the court. Even if Exhibit K were a judicial document, there would be an exceedingly low, if any, presumption of public access because the district court did not rely on the contents of Exhibit K. The district court,

9

moreover, did not abuse its discretion in deciding that Exhibit K—which contained millions of rows of SCB's customer data, including, among other things, customer names, contact information, transaction dates, trade volume, and revenue information—should be sealed to protect the privacy interests of thousands of unrelated non-parties, particularly in the context of a meritless motion that the Court found "threadbare." Brutus IV, 2024 WL 4766997, at *4.

## ARGUMENT

### I. Brutus Lacks Article III Standing to Appeal the District Court's Ruling on the Unsealing Motion.

Brutus has not experienced any personal injury from the district court's denial of the unsealing motion and therefore lacks Article III standing to appeal that ruling. "Article III demands that an actual controversy persist throughout all stages of litigation," which means that "standing must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." Hollingsworth, 570 U.S. at 705 (internal quotation marks omitted). "To have standing, a litigant must seek relief for an injury that affects [it] in a personal and individual way" and have a "direct stake in the outcome of [its] appeal." Id. at 705-06 (internal quotation marks omitted). Such an injury cannot be a "generalized grievance," since "seeking relief that no more directly and tangibly benefits [the appellant] than it does the public at large [] does not state an Article III case or controversy." Id. at 706 (internal quotation marks omitted).

10

Additionally, to have standing at the appellate stage, a party must "demonstrate injury *caused by the judgment*." Tachiona v. United States, 386 F.3d 205, 211 (2d Cir. 2004) (internal quotation marks omitted) (emphasis added).

Here, Brutus has failed to articulate any personal and individual injury whatsoever flowing from the district court's denial of the unsealing motion. Instead, it appeals the district court's decision on the sole basis that Exhibit K should be available for "public scrutiny." (App. Br. at 42.) However, this interest is precisely and transparently the kind that is "held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share," Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 220 (1974), and insufficient for Article III standing.

The weight of the circuit courts that have considered the question agree that a party lacks standing to challenge the seal of a document or proceeding unless it has experienced a personal injury from the seal. E.g., Ernst v. Child & Youth Servs. of Chester Cnty., 108 F.3d 486, 499 (3d Cir. 1997) (affirming district court's holding that party "lacked standing to raise the constitutional rights of the public and press" because she failed to explain how she was personally injured by seal of proceedings); Grae v. Corr. Corp. of Am., 57 F.4th 567, 569 (6th Cir. 2023) (intervenor lacked standing to challenge seal of documents where he only "seeks to vindicate the public's right of access to judicial records" and "conceded that he

11

hasn't suffered any adverse effects from the denial of documents"); United States v. Hickey, 185 F.3d 1064, 1066 (9th Cir. 1999) ("The government, however, lacks third-party standing to assert this right on behalf of the public in this case. The government is the prosecutor, not a third party whose sole interest in the litigation is access to documents."); cf. United States v. Pickard, 733 F.3d 1297, 1301 (10th Cir. 2013) (parties have standing to appeal a sealing order where they "have alleged an actual injury").[3]  In Grae, the Sixth Circuit held that an intervenor lacked standing because he sought only to "vindicate the public's right of access to judicial records" and had not articulated a personal injury.  57 F.4th at 569.  In arriving at this conclusion, the Sixth Circuit relied on TransUnion LLC v. Ramirez, in which the Supreme Court had held that "[a]n asserted informational injury that causes no adverse effects cannot satisfy Article III."  594 U.S. 413, 442 (2021) (internal quotation marks omitted).  The Sixth Circuit observed that the "chorus of precedent all sings the same tune: to have standing, litigants must have suffered adverse effects from the denial of information."  Grae, 57 F.4th at 571.

---

[3] The Fourth and Fifth Circuits have not reached the same conclusion.  See Rosenfeld v. Montgomery Cnty. Pub. Schs., 25 F. App'x 123, 131 (4th Cir. 2001); United States v. Holy Land Found. For Relief & Dev., 624 F.3d 685, 690-91 (5th Cir. 2010).  However, these decisions were reached before the Supreme Court's decision in TransUnion LLC v. Ramirez, 594 U.S. 413 (2021), discussed further below.

Although the Second Circuit has not addressed the specific question of standing in the context of sealing, it has likewise relied on <u>TransUnion</u> to firmly hold that parties who bring a claim relating to the deprivation of information must have suffered personal adverse effects to have Article III standing. <u>Harty v. W. Point Realty, Inc.</u>, 28 F.4th 435, 444 (2d Cir. 2022) ("Even assuming that Harty can allege that he was deprived of information to which he is entitled by the ADA, he must also allege downstream consequences from failing to receive the required information in order to have an Article III injury in fact.") (internal quotation marks omitted).

Here, Brutus has not even attempted to assert any personal injury from the district court's decision. That is unsurprising, as Exhibit K is Brutus's own collection of spreadsheets, to which it continues to have access. Indeed, while Article III standing requires that an appellant seek relief that *more* "directly and tangibly benefits [the appellant] than it does the public at large," <u>Hollingsworth</u>, 570 U.S. at 706, here, the relief would benefit Brutus *less* than the public at large, since it already has possession of the spreadsheets that comprise Exhibit K. In fact, Brutus is the party that initially filed the Exhibit K hard drive under seal, asserting—correctly—that Exhibit K "contain[ed] sensitive data that is not relevant to these proceedings" and should be sealed "to protect the economic privacy of innocent third parties." (JA 239.) It would be impossible to credit any argument

13

that Brutus was personally injured by the court's decision to maintain the seal that it sought, over a document to which it has always had access. Because standing to appeal "is conferred only on parties 'aggrieved' by the judgment," Concerned Citizens of Cohocton Valley, Inc. v. New York State Dep't of Env't Conservation, 127 F.3d 201, 204 (2d Cir. 1997), Brutus lacks Article III standing to challenge the district court's denial of the motion to unseal. Accordingly, Brutus's appeal of that ruling should be dismissed.

## II. The District Court Did Not Abuse Its Discretion in Keeping Exhibit K Under Seal.

Even if Brutus has Article III standing to bring its appeal, the Court should affirm the sealing order because the district court did not abuse its discretion when denying the motion to unseal the nearly 200 spreadsheets on the Exhibit K hard drive. This Court reviews a district court's decision to seal or unseal for abuse of discretion, factual findings for clear error, and conclusions of law de novo. See Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 139 (2d Cir. 2016). "A district court abuses its discretion when (1) its decision rests on an error of law or a clearly erroneous factual finding, or (2) its decision cannot be located within the range of permissible decisions." Buon v. Spindler, 65 F.4th 64, 74 (2d Cir. 2023) (internal quotation marks omitted and alterations incorporated).

To determine whether the presumption of access attaches to a document, the Second Circuit "engages in a three-step inquiry": (1) determine "whether the

14

record at issue is a judicial document"; (2) if so, "determine the weight of the presumption of access"; and (3) "identify all of the factors that legitimately counsel against disclosure . . . and balance those factors against the weight properly accorded the presumption of access." <u>Mirlis v. Greer</u>, 952 F.3d 51, 59 (2d Cir. 2020) (internal quotation marks omitted). As set forth below, the Exhibit K spreadsheets are not judicial documents; even if they were, the weight of any presumption of access would be minimal; and the district court did not abuse its discretion in determining that countervailing privacy interests prevailed.

### A. Exhibit K is not a Judicial Document.

For a document to be considered a judicial document, it must be "relevant to the performance of the judicial function and useful in the judicial process." <u>Lugosch v. Pyramid Co. of Onondaga</u>, 435 F.3d 110, 119 (2d Cir. 2006). Thus, the "mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." <u>United States v. Amodeo</u> ("<u>Amodeo I</u>"), 44 F.3d 141, 145 (2d Cir. 1995). Instead, the document's contents must "reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers." <u>Brown v. Maxwell</u>, 929 F.3d 41, 49 (2d Cir. 2019). That is not the case here.

*First*, the inquiry into whether Exhibit K is a judicial document must be evaluated in light of the circumstances of this litigation. As an initial matter, Rule

60(d)(3) imposes a "stringent and narrow" path for relief that requires the movant

to show, by clear and convincing evidence, not only that a fraud occurred, but also

that the fraud "seriously affect[ed] the integrity of the normal process of

adjudication, and that the fraud, misrepresentation or conduct actually deceived the

court." <u>Brutus IV</u>, 2024 WL 4766997, at *3 (internal quotation marks omitted and

alteration incorporated). Here, that "formidable burden" of review, <u>id.</u>, is

compounded by the exceptionally deferential standard on the underlying motion to

dismiss pursuant to Section 3730(c)(2)(A) of the False Claims Act, where "the

[g]overnment's views are entitled to substantial deference" and where "the court

should grant the motion" as long as the government "offers a reasonable argument

for why the burdens of continued litigation outweigh its benefits." <u>United States</u>

<u>ex rel. Polansky v. Exec. Health Res., Inc.</u>, 599 U.S. 419, 437-38 (2023).[4]

Moreover, here, after the government's dismissal, Brutus's claims went through

unending additional review: a first post-judgment motion, this Court's affirmance

of both the dismissal and the denial of that post-judgment motion, this Court's

denial of *en banc* review, and the Supreme Court's denial of certiorari. Brutus's

*second* post-judgment motion then argued that the government had committed

---

[4] In fact, a Section 3730(c)(2)(A) motion to dismiss is akin to a plaintiff's
voluntary dismissal under Federal Rule of Civil Procedure 41(a), upon which "the
district court has no adjudicatory role." <u>Polansky</u>, 599 U.S. at 436-37 & n.4.

fraud years ago by failing to "decloak" data that, as the district court pointed out, Brutus itself did not "decloak" until recently.  Brutus IV, 2024 WL 4766997, at *3.  Considering all of these circumstances, Brutus has at minimum an uphill battle to demonstrate that Exhibit K reasonably had the tendency to influence the district court's ruling on whether the court had been the victim of a fraud that "seriously affect[ed] the integrity of the normal process of adjudication, and that the fraud, misrepresentation or conduct actually deceived the court."  Id. (internal quotation marks omitted and alteration incorporated).

*Second*, Exhibit K was not a judicial document because its *contents* were not relevant to the performance of the judicial function.  Although Brutus asserts that Exhibit K was the "factual foundation for the Rule 60(d) [m]otion" (App. Br. at 45), this Court has recognized that there is a distinction between the relevance of a document's *contents* to the performance of the judicial function and that of a document's *existence*; it is "the relevance of the document's *specific contents* to the nature of the proceeding" that renders a document a judicial document. Newsday LLC v. Cnty. of Nassau, 730 F.3d 156, 166-67 (2d Cir. 2013) (emphasis added).  In Newsday, while conducting a contempt proceeding regarding whether an individual had violated an order not to disclose the contents of an investigative report, the district court had sealed the report.  Id. at 166-68.  On appeal of the sealing order, this Court affirmed, reasoning that even though "the entire contempt

proceeding was, in some sense, *about* the Report," the report itself was not a judicial document because "the *substance* of the full Report was not significantly relied upon or at issue in the contempt proceeding." Id. at 167 (emphases added).

That is precisely the case here: Exhibit K is not a judicial document because its *contents* were not relevant to and did not reasonably have the tendency to influence the district court's ruling on Brutus's Rule 60 motion. Brutus's motion concerned whether the government had lied to the district court regarding the thoroughness of the government's investigation—an analysis for which the district court would have no reason to engage with Exhibit K's contents. That is made clear by the fact that although Brutus submitted the Exhibit K hard drive with its opening brief, *the brief did not cite to Exhibit K at all*—underscoring the lack of relevance or usefulness of Exhibit K's contents to Brutus's contentions and the district court's function. (See generally Dkt. No. 102.) Brutus relied on the description of certain transactions, charts, spreadsheets, and screenshots of various files within the Exhibit K hard drive in the affidavit of its forensic expert—which was not filed under seal and remains available publicly—instead of pointing the district court to Exhibit K itself. (Dkt. 102 at 9-12; JA 150-78.) The government's opposition also did not cite to Exhibit K. (Dkt. 137.)[5] Just as in Newsday,

---

[5] The first time the district court was directed to Exhibit K in the parties' briefs was in Brutus's reply brief (Dkt. 142 at 14-15), to support an alleged

(….continued)

although Brutus's Rule 60 motion "was, in some sense, about" certain data contained within some of Exhibit K's spreadsheets, Exhibit K's *contents* were not "significantly relied upon or at issue." 730 F.3d at 167. Instead, Exhibit K was a "mere filing of a paper or document with the court," insufficient to render it a judicial document. Amodeo I, 44 F.3d at 145.

### B. The Weight of Any Presumption of Public Access to Exhibit K is, at Most, Minimal.

Even if Exhibit K were to be considered a judicial document, the presumption of public access that attaches to it would be exceedingly low.

*First*, "[w]hile cognizant of the presumption in favor of public access," if an exhibit "played only a negligible role in the district court's decision, [] the presumption of public access is weak"—even where it is attached to a summary judgment motion. Maragh v. Roosevelt Island Operating Corp., 2022 WL 14199384, at *2 (2d Cir. Oct. 25, 2022) (internal quotation marks and citation omitted). So too here. Given the irrelevance of Exhibit K to the question of whether the government perpetrated a fraud upon the court in moving to dismiss under the Rule 41(a) standard, it is logical that Exhibit K is cited nowhere in, and played no role in, the district court's decision. The district court noted the

---

example of decloaked "secret, intra-bank instructions by SCB personnel," which is not relevant to the question of whether the government lied to the court.

*existence* of data that Brutus had provided to the government in 2012 and 2013, and evaluated Brutus's fanciful claim that the government had lied to the district court regarding its underlying investigation, but ultimately concluded that "Brutus's showing [did] not come close to meeting its formidable burden to secure Rule 60(d)(3) relief." Brutus IV, 2024 WL 4766997, at *4 (internal quotation marks omitted). The district court's decision turned on the facts that: (1) "the Government has repeatedly detailed its thorough investigation . . . and the reasons it found that Brutus's evidence, including the spreadsheets that Brutus claims to have 'decloaked,' do not substantiate its allegations"; (2) "Brutus concedes that the Government has already 're-reviewed' the provided data" and "did not see any additional material information that would have been relevant" to the Government's investigation; (3) Brutus had "been given ample opportunity to pursue" its "allegation of fraud upon the Court by the Government"; and (4) "Brutus has had possession of these materials for years" and "is responsible for its decision to wait until recently to pursue the 'decloaking' of the data within these files on which it now relies." Id. at *4-5.

This was not an analysis that turned, or had any need to turn, on the specific contents of Exhibit K. Because the contents of Exhibit K did not even play a "negligible role in the district court's decision," Maragh, 2022 WL 14199384, at *2, the presumption of public access is exceedingly low, if it exists at all.

20

*Second*, the presumption of access to documents, either under the common law or the First Amendment qualified access, assumes that a party "supported their papers with admissible evidence and non-frivolous argument." Lugosch, 435 F.3d at 122; see Brown, 929 F.3d at 47 n.12 (observing that the Lugosch assumption that a filing is not frivolous—thereby favoring a presumption of access—may not apply in all cases). Here, the district court's decision on the motion to unseal came at the end of its opinion rejecting Brutus's *second* post-judgment motion—where its first post-judgment motion, which also asserted that the government had committed a fraud on the court, had already been considered and rejected not only by the district court but also by the Second Circuit, including with the denial of *en banc* review, and with certiorari denied by the Supreme Court. In its opinion, the district court stated flatly: "[t]he Court has previously found Brutus's allegations of fraud threadbare. The Court so finds again." Brutus IV, 2024 WL 4766997, at *4. Thus, the presumption of access to documents attached to Brutus's vexatious filing, which was (and remains) a waste of judicial and party resources, is de minimis or non-existent.

*Third*, the qualified First Amendment right to access judicial documents, which attaches to documents that have "historically been open to the press and general public" according to "experience and logic," Lugosch, 435 F.3d at 120 (internal quotation marks omitted), does not attach to Exhibit K. Exhibit K is a

3.5-gigabyte hard drive of *millions* of banking transactions taken without authorization and manipulated over the course of twelve years, which was filed with a *second* post-judgment motion after the failure of a *first* post-judgment motion (and the failure of its appeal, petition for *en banc* review, and certiorari). As discussed above, the contents of this hard drive were irrelevant as a matter of law to the question of whether the government committed a fraud on the court, and contained "sensitive data that is not relevant to these proceedings," as Brutus itself represented to the Court in seeking the sealing of Exhibit K in the first place (JA 239). This is not the type of filing that has "historically been open to the press and general public"; public access would not "play[] a significant positive role in the functioning of the particular process in question"; and the documents are not "derived from [] a necessary corollary of the capacity to attend the relevant proceedings," Lugosch, 435 F.3d at 120 (internal quotation marks omitted).[6]

---

[6] Brutus also argues that the presumption of access is "accentuated" when the government is a party to the case, citing to a First Circuit case from 1987. (App. Br. at 44.) Even if that were a standard that applied in this Circuit today, in this case Exhibit K would not enhance the monitoring of the government. Here, the record before the district court already contains numerous declarations from the government concerning their investigation into SCB that have been credited by the district court. As discussed above, the question presented was whether the government had lied to the court about what *it* knew about the data, which would find no answer in the data itself.

For these reasons, any presumption of access that attached to Exhibit K is minimal, at most.

### C. The District Court Did Not Abuse Its Discretion in Concluding that Privacy Considerations of Non-Parties Warranted the Seal.

"A district court abuses its discretion when (1) its decision rests on an error of law or a clearly erroneous factual finding, or (2) its decision cannot be located within the range of permissible decisions." Buon, 65 F.4th at 74 (internal quotation marks omitted and alterations incorporated). Neither of these standards remotely applies to the district court's decision to maintain the seal. Contrary to Brutus's assertions, the district court denied the motion to unseal with "specific, on-the-record findings that sealing is necessary to preserve higher values," and "the sealing order is narrowly tailored to achieve that aim." Lugosch, 435 F.3d at 124. And its decision followed Second Circuit precedent that instructs that "the privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation." United States v. Amodeo ("Amodeo II"), 71 F.3d 1044, 1050 (2d Cir. 1995) (internal quotation marks omitted).

Before concluding that the Exhibit K hard drive was "properly maintained under seal, to protect the privacy interests of unrelated third parties," the district court described in detail the arguments provided by the parties. Brutus IV, 2024 WL 4766997, at *6 n.4. This included Brutus's initial argument that sealing was necessary "'[t]o protect the economic privacy of innocent third parties,' because

the data 'contain[ed] sensitive data that is not relevant to these proceedings.'" Id.

(quoting JA 239-40). The district court went on to consider additional arguments

made against the motion to unseal, including SCB's arguments that Exhibit K was

"collected without its consent," contained "raw data including, among other things,

customer names, contact information, transaction dates, trade volume and revenue

information," and had "'dubious accuracy and origin,' given Brutus's admissions

to manipulating the data in connection with its 'decloaking' process." Id. The

district court then concluded that Exhibit K was properly maintained under seal "to

protect the privacy interests of unrelated third parties." Id.

    This was not an abuse of discretion. Indeed, courts have routinely

recognized that bank customers have a "justifiable expectation of privacy that their

names and financial records not be revealed to the public," Strauss v. Credit

Lyonnais, S.A., 2011 WL 4736359, at *4 (E.D.N.Y. Oct. 6, 2011), and have sealed

bank records in similar circumstances. E.g., id. at *5 (finding "significant that the

banking records also concern financial transactions involving many other persons

and entities who have not been notified of their rights to object"); Phillips v.

Fashion Inst. of Tech., 2024 WL 4007929, at *1 (S.D.N.Y. Aug. 30, 2024) (sealing

banking information because "privacy rights outweigh the need for public

access"); SEC v. Telegram Grp. Inc., 2020 WL 3264264, at *5 (S.D.N.Y. June 17,

2020) (holding that confidentiality of "banking records outweighs the public's

presumption of access"). The district court's decision did not rest on an error of law or a clearly erroneous factual finding, and its decision can be located well within the range of permissible decisions; therefore, it did not abuse its discretion.

Brutus makes several other scattershot arguments that do not counsel a different conclusion. *First*, Brutus argues that Exhibit K should be unsealed because it has had the spreadsheets in Exhibit K for over twelve years. (App. Br. at 47.) However, the passage of time in fact militates *against* unsealing: given the amount of time that has passed since the data was taken, and given that Brutus has admitted in its various filings to the district court that it manipulated the data (see JA 202; JA 233-34), there is a risk of misleading the public if the information in these 200 spreadsheets, of dubious reliability, is made public.[7] Indeed, this Court has noted that "unverified information should not be as readily disclosed as matters that are verified." Amodeo II, 71 F.3d at 1051.

*Second*, Brutus argues that concerns about "the authenticity of the Decloaked Data are already debunked" (App. Br. at 46)—an assertion that lacks both coherence and support. Other than generally asserting that the 200 spreadsheets in Exhibit K were removed from SCB by Julian Knight and

---

[7] Brutus's argument about the length of time that it has had these spreadsheets also underscores that it does not have Article III standing to pursue this appeal; the fact that Brutus has long enjoyed unfettered access to the spreadsheets eliminates any conceivable harm to it from continued sealing of them.

Anshuman Chandra without authorization, Brutus has not provided any specific information about the custodial chain of the data; by contrast, it has admitted to manipulating the data (JA 202; JA 233-34), which heightens questions about Exhibit K's reliability. Brutus contends that "[n]either the Government nor SCB had ever before challenged the district court's consideration of Exhibit K on authenticity grounds," presumably meaning to argue that they had not challenged the authenticity of Exhibit K prior to SCB's opposition to the motion to unseal. (App. Br. at 46-47.) That contention is specious; given that Brutus initially sought to seal the exhibit, the first time the exhibit could have become public was when the third party moved to unseal it—at which point SCB raised questions about the exhibit's veracity and origin. (JA 348.)

*Finally*, Brutus argues that it will "cooperate" in implementing redactions on Exhibit K—a hard drive with *millions* of transactions. (App. Br. at 47.) Not only does the sheer volume of the data make the exercise entirely impracticable, but also any remaining information after redactions for customer identifying information would have little meaning or use to the public and would contain the same information that is already included in the declarations that were publicly filed and remain publicly available. See Amodeo II, 71 F.3d at 1048 (reversing the district court's decision to unseal a portion of a report with redactions, and thus maintaining the seal on that portion, where redactions would be so extensive they

26

"would provide little meaningful information to the public"). For similar reasons, Brutus's argument that the district court should have conducted a "particularized review" to hold that "'privacy interests outweigh[ed] the presumption of public access in each of the' countless transactions contained in the Brutus Data" is untenable. (App. Br. at 46 (quoting <u>Brown</u>, 929 F.3d at 50-51).) <u>Brown</u> does not instruct a busy district court to spend its judicial resources on issuing a written sealing decision for every one of millions of transactions,[8] and Brutus's own description of the transactions in the data as "countless" underscores the unsustainability of its position. The needlessness of such an exercise is particularly obvious here given the context in which the documents were filed with the district court: in a *second* frivolous motion for post-judgment relief.

As the Supreme Court has instructed, "[T]he decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." <u>Nixon v. Warner Commc'ns, Inc.</u>, 435 U.S. 589, 599 (1978) (quoted in <u>Amodeo I</u>, 44 F.3d at 146). In light of all of the facts and circumstances of this case, the district court's

---

[8] In <u>Brown</u>, the Second Circuit held that the district court had erred in issuing just one sealing decision that applied to a number of different filings, including "filings related to, *inter alia*, motions to compel testimony, to quash trial subpoenae, and to exclude certain deposition testimony." 929 F.3d at 50.

decision to maintain Exhibit K under seal was well within its discretion and should be affirmed.

## CONCLUSION

This appeal represents Brutus's latest "last-ditch" effort to maintain *qui tam* claims that have been rejected by the government at every turn, through multiple state and federal agencies, the district court, and indeed, the Second Circuit itself. This case is now well into its second decade of litigation and should end here (as it should have ended with Brutus's previous "last-ditch" efforts to revive its failed claim, including its first motion for post-judgment relief and its petition for *en banc* review and *certiorari* following this Court's prior decision).

For the foregoing reasons, SCB respectfully submits that Brutus's appeal of the district court's order denying the motion to unseal Exhibit K be dismissed, or, in the alternative, that the district court's order be affirmed.

Dated:  New York, New York
       July 22, 2025

DAVIS POLK & WARDWELL LLP

*/s/ Antonio J. Perez-Marques*

Antonio J. Perez-Marques
450 Lexington Avenue
New York, NY 10017
(212) 450-4559
antonio.perez@davispolk.com

*Attorney for Defendants-Appellees*
*Standard Chartered Trade Services*
*Corporation, Standard Chartered*
*Bank, and Standard Chartered*
*PLC*

29

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief complies with the type-volume limitation of Second Circuit Rule 32(a)(7)(B) because this brief contains 6,907 words, excluding the parts of the brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure. That approximation is based on the "Word Count" function of the word-processing program used to draft the enclosed brief.

I further certify that this brief complies with the requirements of Rule 32(a) because this brief has been prepared in 14-point font in a proportionally spaced typeface using Microsoft Word 2010.


Dated:   New York, New York               */s/ Antonio J. Perez-Marques*
           July 22, 2025                          Antonio J. Perez-Marques