# 25-115

*To Be Argued By*:
JEAN-DAVID BARNEA

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

### Docket No. 25-115

◄◆◆◆►

BRUTUS TRADING, LLC,

*Plaintiff-Appellant,*

ABC,

*Plaintiff,*

*(Caption continued on inside cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR INTERESTED PARTY-APPELLEE
## UNITED STATES

JAY CLAYTON,
*United States Attorney for the
Southern District of New York,
Attorney for Interested Party-
Appellee.*
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2679

JEAN-DAVID BARNEA,
BENJAMIN H. TORRANCE,
*Assistant United States Attorneys,
Of Counsel.*

—v.—

STANDARD CHARTERED BANK, STANDARD
CHARTERED PLC, STANDARD CHARTERED TRADE
SERVICES CORPORATION,

*Defendants-Appellees,*

UNITED STATES OF AMERICA,

*Interested Party-Appellee,*

DEF,

*Defendant.*

# TABLE OF CONTENTS

PAGE

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . .  1

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . .  4

Issue Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . .  5

    A.   Procedural History . . . . . . . . . . . . . . . . . . . .  5

    B.   Brutus's *Qui Tam* Case Leading up to the Current Motion . . . . . . . . . . . . . . . . . . . . . .  6

        1.   The Government's Investigation of Brutus's Allegations . . . . . . . . . . . . . . .  6

        2.   The Government's Separate Investigation of SCB . . . . . . . . . . . . . . .  8

        3.   The Government's Motion to Dismiss . . . . . . . . . . . . . . . . . .  8

        4.   Brutus's First Motion for Relief from the Judgment . . . . . . . . . .  10

        5.   This Court Affirms the District Court's Decisions . . . . . . . . . .  12

    C.   Brutus's Second Motion for Relief from the Judgment . . . . . . . . . . . . . .  13

    D.   The District Court Denies Brutus's Motion . . . . . . . . . . . . . . . . . . . . . .  14

Summary of Argument . . . . . . . . . . . . . . . . . . . . . .  16

ii

PAGE

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . 17

The District Court Correctly Rejected Brutus's
    Allegations of Fraud on the Court . . . . . . . . . 18

    A.  Brutus Was Not Prevented from Raising
        Its Fraud Allegations Earlier. . . . . . . . . . . 19

        1.  Brutus Already Litigated, and Lost,
            Its Allegation of Fraud on the Court . 20

        2.  Brutus Was Not Diligent in Identifying
            Supposedly New Evidence and Was Not
            Prevented from Doing So by the
            Government . . . . . . . . . . . . . . . . . . . . . . 22

    B.  Brutus Has Not Established Any
        Fraud on the Court. . . . . . . . . . . . . . . . . . . 25

        1.  Brutus's Claim of Fraud Are
            Belied by the Factual Record . . . . . . . 26

        2.  Brutus Has No Evidence of
            Government Bad Faith . . . . . . . . . . . 29

        3.  Brutus's Allegations Do Not
            Amount to Fraud on the Court . . . . . . 33

    C.  Brutus Has Not Made a "Substantial
        Threshold Showing" Justifying
        Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . 35

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

iii

## TABLE OF AUTHORITIES

*Cases*:

*Ballew v. DOJ*,
No. 99-11308, 2000 WL 1901696
(5th Cir. Dec. 15, 2000). . . . . . . . . . . . . . . . . . . . . 34

*Borzilleri v. Bayer Healthcare Pharmaceuticals, Inc.*,
24 F.4th 32 (1st Cir. 2022) . . . . . . . . . . . . . . . 34, 35

*Brutus Trading LLC v. Standard Chartered Bank*,
2023 WL 5344973
(2d Cir. Aug. 21, 2023) . . . . . . . . . . . . . . . . . *passim*

*Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*,
117 F.3d 655 (2d Cir. 1997) . . . . . . . . . . . . . . . . . 20

*Davis v. HHS*,
968 F. Supp. 2d 176 (D.D.C. 2013) . . . . . . . . . . . 34

*Giurca v. Montefiore Health Sys., Inc.*,
No. 18 Civ. 11505, 2023 WL 9102694
(S.D.N.Y. Dec. 21, 2023) . . . . . . . . . . . . . . . . . . . . 18

*Gleason v. Jandrucko*,
860 F.2d 556 (2d Cir. 1988) . . . . . . . . . . . . . . . . . 18

*Hadges v. Yonkers Racing Corp.*,
48 F.3d 1320 (2d Cir. 1995) . . . . . . . . . . . . . . . . . 25

*King v. First American Investigations, Inc.*,
287 F.3d 91 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . 25

*LinkCo, Inc. v. Akikusa*,
615 F. Supp. 2d 130 (S.D.N.Y. 2009) . . . . . . . . . . 33

iv

PAGE

*Liteky v. United States*,
    510 U.S. 540 (1994). . . . . . . . . . . . . . . . . . . . . . . . 37

*Marco Destin, Inc. v. Levy*,
    111 F.4th 214 (2d Cir. 2024) . . . . . . . . . 18, 20, 24

*Mazzei v. The Money Store*,
    62 F.4th 88 (2d Cir. 2023) . . . . . . . . . . . . . *passim*

*Robinson v. Audi Aktiengesellschaft*,
    56 F.3d 12597 (10th Cir. 1995 . . . . . . . . . . . . . . 30

*Segal v. Gordon*,
    467 F.2d 602 (2d Cir. 1972) . . . . . . . . . . . . . . . . 30

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) . . . . . . . . . . . . . . . . 30

*Space Hunters, Inc. v. United States*,
    500 F. App'x 76 (2d Cir. 2012) . . . . . . . . . . . . . . 30

*U.S. Steel v. M. DeMatteo Construction Co.*,
    315 F.3d 43 (1st Cir. 2002). . . . . . . . . . . . . . . . . 23

*United States ex rel. Polansky v.*
    *Executive Health Resources, Inc.*,
    599 U.S. 419 (2023). . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Awadallah*,
    436 F.3d 125 (2d Cir. 2006) . . . . . . . . . . . . . . . . 36

*United States ex rel. Brutus Trading, LLC v.*
    *Standard Chartered Bank*,
    2020 WL 3619050
    (S.D.N.Y. July 2, 2020). . . . . . . . . . . . . . . . *passim*

v

PAGE

*United States ex rel. Brutus Trading, LLC v.*
    *Standard Chartered Bank,*
    2021 WL 4772142
    (S.D.N.Y. Oct. 13, 2021) . . . . . . . . . . . . . . . *passim*

*United States v. Cimera,*
    459 F.3d 452 (3d Cir. 2006) . . . . . . . . . . . . . . . . 24

*United States v. City of New York,*
    717 F.3d 72 (2d. Cir. 2013) . . . . . . . . . . . . . . . . . 36

*Statutes*:

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

31 U.S.C. § 3729 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

31 U.S.C. § 3730 . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 8

*Rules*:

Federal Rule of Civil Procedure 60 . . . . . . . . . 4, 5, 18

Federal Rule of Civil Procedure 62.1 . . . . . . . . . . 5, 10

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

## Docket No. 25-115

––––––––––

BRUTUS TRADING, LLC,

*Plaintiff-Appellant,*

—v.—

STANDARD CHARTERED BANK,
STANDARD CHARTERED PLC,
STANDARD CHARTERED TRADE SERVICES CORPORATION,

*Defendants-Appellees,*

UNITED STATES OF AMERICA,

*Interested Party-Appellee.*

––––––––––

## BRIEF FOR INTERESTED PARTY-APPELLEE UNITED STATES

––––––––––

### Preliminary Statement

Brutus Trading, LLC, a *qui tam* relator, seeks to revive a False Claims Act case that was dismissed five years ago by the district court (and whose dismissal was affirmed by this Court) by claiming without basis that there was fraud on the court. Brutus faults the government, which investigated the *qui tam* complaint, for considering only the information Brutus

2

provided at the time—and not additional information
Brutus allegedly discovered more than a decade after
the fact. Specifically, in 2012 and 2013 Brutus identi-
fied to the government specific transactions between
defendant Standard Chartered Bank ("SCB" or the
"Bank") and particular Iranian clients that Brutus
alleged violated sanctions on Iran. The government
thoroughly investigated the Bank's involvement in
those particular transactions and its relationships
with those particular customers, and did not identify
any violations. But the government did not review
SCB's transactions with thousands of other customers
that appeared in various transaction ledgers that
no one, including Brutus, identified as potentially
problematic at the time—nor would such a review
have been reasonable. Now, over a decade later,
Brutus claims to have discovered additional potential
sanctions violations by the Bank—and on the basis of
its own late alleged revelation, insists that the govern-
ment somehow defrauded the district court by claim-
ing that its investigation into the *qui tam* complaint
was comprehensive.

The district court rejected that claim, and its deci-
sion should be affirmed for several reasons. First, a
litigant may accuse its adversary of committing fraud
on the court after the fact only if it was precluded from
discovering and raising the supposed fraud during the
underlying litigation. But Brutus not only was not pre-
cluded from raising this fraud allegation earlier—it
made substantially similar fraud allegations during
earlier litigation over the dismissal of its claim, which
have already been rejected by the district court and
this Court. As for the information Brutus claims to

3

have newly discovered—data "hidden" in spreadsheets it had all along—its lack of diligence in locating this information and bringing it to the government's attention precludes any suggestion of government impropriety.

More fundamentally, Brutus has not plausibly alleged fraud on the court. The government thoroughly investigated the allegations in Brutus's *qui tam* complaint, but—reasonably—never claimed to have reviewed information well outside the bounds of that complaint, including the transactions Brutus says it uncovered only recently. Brutus points to no evidence to the contrary, nor does it provide any support beyond speculation for its unfounded allegation that the government acted in bad faith. And Brutus's claims would not amount to fraud on the court even if true, as that species of fraud is limited to the narrow circumstances when a party interferes with the ability of the court itself to adjudicate the case.

The district court also correctly concluded that Brutus was not entitled to discovery to attempt to prove up its spurious fraud claims, as it came nowhere near the threshold showing needed to warrant discovery on such a claim. Similarly unfounded is Brutus's request that this case be remanded to a different district judge, as if the district court's justifiable frustration at Brutus's numerous meritless applications in this case were evidence of improper bias.

Brutus has, over the course of this lengthy litigation, made many baseless accusations of government fraud based on nothing more than disagreement with the result of the government's investigation. The

4

district court and this Court have previously rejected such claims as without foundation. This Court should do so again now and affirm the district court's order.

## Jurisdictional Statement

The district court had jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3730(b)(1). The district court (Paul A. Engelmayer, J.) entered judgment dismissing Brutus's claims on July 2, 2020. (Joint Appendix ("JA") 10). This Court affirmed the judgment of dismissal on August 21, 2023. *Brutus Trading LLC v. Standard Chartered Bank* ("*SCB III*"), No. 20-2578, 2023 WL 5344973 (2d Cir. Aug. 21, 2023), *cert. denied*, 144 S. Ct. 1011 (2024). On May 31, 2024, Brutus moved to set aside the judgment pursuant to Federal Rule of Civil Procedure 60(d)(3). (JA 35). The district court denied Brutus's motion by order entered on November 13, 2024. (Special Appendix ("SPA") 13; JA 552); 2024 WL 4766997 (S.D.N.Y. Nov. 13, 2024). Brutus timely filed a notice of appeal on January 13, 2025. (JA 563). Accordingly, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## Issue Presented

Whether the district court acted within its discretion in denying Brutus's motion to set aside the judgment dismissing the case based on an allegation of supposed fraud on the court, and in concluding that Brutus had not made a substantial preliminary showing to warrant discovery.

5

## Statement of the Case

### A. Procedural History

Relator Brutus Trading, LLC, filed its initial *qui tam* complaint in this case on November 28, 2018 (JA 3), which in turn was based on an earlier complaint Brutus had filed in December 2012 and voluntarily withdrew in 2017. *See United States ex rel. Brutus Trading, LLC v. Standard Chartered Bank* ("*SCB I*"), No. 18 Civ. 11117, 2020 WL 3619050, at *1-2 (S.D.N.Y. July 2, 2020). After Brutus twice amended its complaint (JA 5-6), the government moved to dismiss the action on November 21, 2019, pursuant to 31 U.S.C. § 3730(c)(2)(A) (JA 7). The district court dismissed Brutus's complaint by judgment entered July 2, 2020. (JA 10); *SCB I*, 2020 WL 3619050. Brutus filed a notice of appeal on July 31, 2020. (JA 10-11).

On October 27, 2020, Brutus filed a motion in the district court under Federal Rule of Civil Procedure 62.1, seeking an indicative ruling as to whether the district court would reopen the proceedings pursuant to Federal Rule of Civil Procedure 60(b)(1), (b)(2), (b)(3), and (d)(3), in light of supposedly new evidence. (JA 11). The district court denied Brutus's motion on October 13, 2021. (JA 13); *United States ex rel. Brutus Trading, LLC v. Standard Chartered Bank* ("*SCB II*"), No. 18 Civ. 11117, 2021 WL 4772142 (S.D.N.Y. Oct. 13, 2021). This Court then affirmed the district court's two decisions in a summary order dated August 21, 2023. *SCB III*, 2023 WL 5344973.

On May 31, 2024, Brutus moved to set aside the judgment of dismissal pursuant to Federal Rule of

6

Civil Procedure 60(d)(3). (JA 35). The district court denied Brutus's motion in an opinion and order dated November 13, 2024. (SPA 18-21). On January 13, 2025, Brutus filed this appeal. (JA 563).

## B. Brutus's *Qui Tam* Case Leading up to the Current Motion

### 1. The Government's Investigation of Brutus's Allegations

In December 2012, SCB entered into a deferred prosecution agreement and related settlements with the U.S. Department of Justice ("DOJ"), the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"), and other agencies, to resolve claims that the Bank engaged in illegal transactions with Iranian clients in violation of Iran sanctions rules from 2001 to 2007. (JA 40-41). Shortly thereafter, Brutus filed its original complaint under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* (JA 41-42). Brutus alleged that the Bank had violated the FCA by supposedly deceiving the government in indicating that the offending conduct had ceased in 2007, and instead had allegedly continued to facilitate sanctions-violative transactions with its existing Iranian clients after 2007. (JA 41-42). Specifically, Brutus's complaint identified allegedly sanctionable transactions facilitated by SCB involving well-known Iranian banks, companies, and government agencies. (JA 42-43, 70; Dist. Ct. Dkt. No. 32-2, ¶¶ 25-34). The complaint was accompanied by a disclosure statement that attached Bank documents, including several lengthy client lists and transaction ledger spreadsheets, on

7

which Brutus highlighted the presence—among many thousands of other clients and transactions—of these known Iranian entities. (JA 43; Dist. Ct. Dkt. No. 61-2, ¶¶ 24-33, 36(F)-(U)). When the government interviewed Brutus's members about its claims, only the Bank's relationships with these types of entities were discussed. (JA 43-44, 70, 110-12).

The government investigated SCB's transactions and relationships with these known Iranian customers by requesting and reviewing hundreds of thousands of pages of Bank documents, interviewing numerous witnesses (including many suggested by Brutus), and receiving presentations from SCB's counsel regarding an internal investigation the Bank conducted in light of the government's inquiry. (JA 45-47, 54-55). Based on this investigation, the government concluded that the transactions and client relationships identified by Brutus did not violate sanctions rules or substantiate Brutus's allegation that SCB had defrauded the government in the investigations that led to the 2012 resolutions with DOJ and other agencies. (JA 45-48, 54-55, 71-72, 88-91). The government thus notified Brutus's counsel in August 2013 that it had not corroborated the allegations in the *qui tam* complaint and intended to decline to intervene in the case. (JA 47-48).[1]

_____

[1] The government received additional documents later in 2013 from an SCB employee who contacted the government through Brutus's counsel. (JA 56-57). The government reviewed these documents and interviewed the employee about them. (JA 56-57, 113-

8

### 2. The Government's Separate Investigation of SCB

Meanwhile, based on information obtained in an unrelated matter, the government began a separate investigation of SCB regarding its relationship with a Dubai-based company that had Iranian links. (JA 48). The government informed Brutus's counsel that—out of an abundance of caution—it would keep the *qui tam* complaint under seal while it pursued this separate investigation, so as not to interfere with the investigation and in case anything the government learned through the investigation might substantiate Brutus's allegations. (JA 49); *see* 31 U.S.C. § 3730(b)(2) (requiring sealing of *qui tam* complaints). This separate investigation was resolved in 2019 with an amended deferred prosecution agreement and related administrative settlements, in which the Bank paid substantial fines and penalties. (JA 50, 76-77, 97-98, 102-03).

### 3. The Government's Motion to Dismiss

On November 21, 2019, the government moved to dismiss this case under 31 U.S.C. § 3730(c)(2)(A), arguing, in relevant part, that the government's investigation had not corroborated Brutus's factual allegations. (Dist. Ct. Dkt. No. 31, at 23-26). In response, Brutus argued that the government had not "exam-

─────────

15). It determined that, like the information provided by Brutus, these documents did not reflect sanctions violations by SCB with respect to the Bank's known Iranian customers. (JA 56-57, 91-92, 113-15).

9

ine[d] the massive volume of evidence [Brutus had] produced," and described the documents it had provided and the transactions those documents listed. (Dist. Ct. Dkt. No. 49, at 5-6). Brutus claimed that certain SCB spreadsheets contained "hidden cells" listing large numbers of transactions, and indicated that Brutus had "discovered the hidden cells and notified the Government of their existence on September 24, 2013," and "explained how the Government could access the hidden information readily." (*Id.* at 24).

The government, in turn, explained that Brutus had only suggested that the government investigate SCB's "transactions with a handful of specific known Iranian entities on these documents," and had not given the government any reason to look into the thousands of other entities listed in these transaction ledgers. (JA 55). As for the "hidden cells," the lead agent of the Federal Bureau of Investigation ("FBI") assigned to the case stated that Brutus had not, during the investigation, "indicate[d] to [the government] that any of the SCB spreadsheets [Brutus] provided contained 'hidden' columns or data," but that as part of preparing his reply declaration supporting the government's motion to dismiss, he had "re-reviewed these documents, including all 'hidden' information [he] could locate, and did not see any additional material information that would have been relevant to [the government's] investigation, such as information suggesting that any entities other than those [Brutus] brought to our attention at the time were Iranian." (JA 55 n.3).

The district court granted the government's motion to dismiss on July 2, 2020. *SCB I*, 2020 WL 3619050.

10

On the basis of the government's detailed explanations of "the steps that the agencies took to investigate [Brutus's] claims, and the reasons why the investigating agencies concluded that the evidence did not substantiate [Brutus's] allegations," the district court concluded that the government had valid bases for dismissing Brutus's *qui tam* complaint, including "the early termination of actions as to which the Government has determined that the factual allegations are meritless." *Id.* at *3 (quotation marks omitted). The court rejected Brutus's argument that the government had "failed to properly investigate its contentions or failed to understand the import of the evidence it provided," concluding that Brutus's "subjective disagreement with the Government's investigative strategy and ultimate decision does not provide the Court with a basis to second-guess the Government's decision to dismiss the case." *Id.* at *4 (quotation marks omitted).

### 4. Brutus's First Motion for Relief from the Judgment

On October 27, 2020, after Brutus had filed a notice of appeal of the district court's dismissal decision, Brutus moved under Federal Rule of Civil Procedure 62.1 for an indicative ruling as to whether the district court would grant it relief from the judgment under Rule 60. (JA 11). The stated basis for the request was the publication of news articles discussing a cache of allegedly leaked Suspicious Activity Reports ("SARs"), which—according to Brutus—suggested the government's declarants had provided false information when they attested that the government had fully investigated but not substantiated Brutus's allegations. (Dist. Ct. Dkt.

11

No. 68, at 3-5, 8-9; Dist. Ct. Dkt. No. 76, at 2-6). Brutus also claimed it was "implausible" that an FBI agent had "closely" examined the materials provided by the SCB employee who had approached the government through Brutus's counsel because the agent had not discovered the "hidden cells" at that time. (Dist. Ct. Dkt. No. 76, at 2-3). Brutus identified various entities that it asserted were included in the SCB spreadsheets it had produced and which, it alleged, were involved in sanctions violations. (Dist. Ct. Dkt. No. 92-1, ¶¶ 7-9; Dist. Ct. Dkt. No. 93-1, ¶¶ 2-4). Brutus thus claimed it was entitled to relief in light of supposedly "newly discovered evidence [under] Rule 60(b)(2), as serious misrepresentations arising out of the Government's 'mistake' or 'excusable neglect,' [under] Rule 60(b)(1), or, more troubling, *as a fraud upon the Court* [under] Rule 60(b)(3)." (Dist. Ct. Dkt. No. 68, at 2 (emphasis added)).

In response, the government explained that "there is no evidence to support [Brutus's] contention that any of the statements in the Government declarations supporting the motion to dismiss contained any inaccuracies, let alone intentional ones." (Dist. Ct. Dkt. No. 73, at 19). And the government noted that Brutus had not identified the entities listed in its Rule 62.1 motion papers as suspicious during the investigation several years earlier, and indeed that these entities were not Iranian at all but rather a collection of "multinational and foreign companies that did business in the Middle East, companies based in the United Arab Emirates with no apparent Iranian ties that would make them subject to U.S. sanctions, and Lebanese banks accused in a recent private lawsuit of facilitating financing for

12

the terrorist group Hezbollah." (Dist. Ct. Dkt. No. 86, at 2 (citing JA 132-33)).

The district court denied Brutus's Rule 62.1 motion, concluding in relevant part that Brutus's submissions did not cast doubt on the veracity of the government's declarations—specifically, that "none of the SARs discussed in the article contradict [the government's] representations about the character of [SCB's] post-2007 transactions." *SCB II*, 2021 WL 4772142, at *5. "Nor do, or by nature could, they unsettle the Government's representations, on which the Court relied, as to the Government's purposes for moving to dismiss this case." *Id*. With respect to Brutus's allegation of government fraud on the court, the district court concluded that the government had made no false representations, and that Brutus had "fail[ed] to establish any requirement of Rule 60(b)(3) and 60(d)(3) for fraud." *Id*. at *6. The court found that "[Brutus] cannot show, let alone by clear and convincing evidence, that the [news articles Brutus cited] reveal material representations that impeded [it] from presenting its case, or that the Court was deceived, and the integrity of its processes affected, by false representations," and indeed concluded that Brutus "has not demonstrated that the Court's decision to dismiss [its] claims was the product of any misrepresentation whatsoever." *Id*.

### 5. This Court Affirms the District Court's Decisions

Brutus then pursued its appeal to this Court, arguing, as relevant, that it had provided the district court with evidence that "refuted" the government's

13

declarations and had put "[t]he credibility of the Government's declarants" at issue. (Appellant's Brief, No. 20-2578, 2021 WL 6072083, at 29, 32 (2d Cir. Dec. 20, 2021)). This Court affirmed the district court's orders in a summary order dated August 21, 2023, agreeing with the district court's conclusion that Brutus's "arguments boil down to nothing more than a 'subjective disagreement' with the government's investigation and its ultimate decision as to Brutus's claims." *SCB III*, 2023 WL 5344973, at *3 (quoting *SCB I*, 2020 WL 3619050, at *4). This Court held that Brutus "has failed to show that the government's investigation was inadequate, that its decision to dismiss the case was unreasonable, or that its decision was based on arbitrary or improper considerations." *Id.* It also summarily affirmed the district court's decision to deny Brutus's Rule 60 application, finding "no basis for concluding that the district court abused its discretion." *Id.* at *4. Brutus then filed a certiorari petition to the U.S. Supreme Court, which was denied on February 26, 2024. 144 S. Ct. 1011 (2024).

## C. Brutus's Second Motion for Relief from the Judgment

On May 31, 2024, Brutus filed its second motion to vacate the judgment (the subject of this appeal), yet again accusing the government and its declarants of fraud on the court because their investigation did not substantiate Brutus's claims. (JA 35). Brutus asserted that, with the assistance of a forensic investigator, it had recently re-reviewed the documents it provided the government in 2012 and 2013, and "decloaked" yet more "hidden data" in these spreadsheets that include

14

what Brutus and its analyst consider to be newly un-covered sanctions-violative conduct by SCB. (SPA 17, 19). Brutus indicated that its previous reviews of these spreadsheets did not uncover this data due to a lack of understanding of how pivot tables work in Microsoft Excel. (JA 149 n.8, 235 n.1). Brutus also asked the district court to permit it to take discovery, including to depose government counsel, in a bid to uncover support for its fraud allegations. (Dist. Ct. Dkt. No. 102, at 16-17).[2]

## D. The District Court Denies Brutus's Motion

The district court denied Brutus's motion. (SPA 18-21). The court first noted the "formidable burden" facing a litigant accusing its adversary of fraud on the court under Rule 60(d)(3), and noted that such relief is available only "when necessary to prevent a grave miscarriage of justice." (SPA 18 (quotation marks omitted)).

The district court held that Brutus "does not come close" to satisfying this exacting standard. (SPA 19). The court noted that it had previously repeatedly rejected Brutus's unsupported accusations of fraud,

---

[2] Brutus further asked the district court to appoint an independent expert pursuant to Federal Rule of Evidence 706(a) to examine the spreadsheets at issue (JA 16) and to disqualify government counsel (JA 17). The district court denied these applications. (SPA 7-11, 21-22). Brutus has not raised those issues in its briefing on appeal.

15

and did so again in this instance for at least two reasons. (SPA 19). First, the district court concluded that Brutus had provided no basis to conclude that government declarants had made any false representations to the court. (SPA 19-20). Those declarants explained that they had examined the material provided by Brutus, including any hidden data they were able to uncover in the spreadsheets, as part of the investigation into Brutus's allegations. (SPA 19). As the district court determined, nothing in Brutus's latest set of accusations called those statements into question, let alone provided any basis for a court to find that any government agent "acted to deceive or with conscious awareness that its findings were incorrect." (SPA 19-20).

Second, the district court explained that a litigant claiming fraud on the court after the fact must show that it lacked "a reasonable opportunity to uncover the alleged fraud during the underlying action" (SPA 21), and thus rejected Brutus's argument that it had not been given a "meaningful opportunity to challenge the Government's [allegedly] false statements" (SPA 20). The court instead concluded that Brutus had "been given ample opportunity to pursue [its] allegation[s]" of fraud previously but had simply come well short. (SPA 20). As for the newly "decloaked" spreadsheet data specifically, the district court found that it was Brutus—not the government—that was responsible for the lengthy delay in bringing this matter to the court given that Brutus had "possession of these materials for years." (SPA 21).

16

The district court also denied Brutus's request for discovery, concluding that "[t]here is no basis to pursue . . . additional discovery," given that Brutus "has not demonstrated that the Court's decision to dismiss its claims was the product of fraud on the Court or anything close." (SPA 22).[3]

This appeal followed. (JA 563).

## Summary of Argument

This Court should affirm the district court's denial of Brutus's motion to vacate the judgment of dismissal. As a preliminary matter, Brutus's motion was properly denied because Brutus was not prevented from alleging government misconduct during the earlier litigation over the government's motion to dismiss. Indeed, Brutus similarly accused the government of fraudulently misrepresenting the comprehensiveness of its investigation during that earlier motion practice, and the district court and this Court rejected these allegations. *See infra* Point A.1. As for Brutus's allegations

---

[3]    During the briefing of Brutus's motion, a British newspaper requested that the district court unseal the allegedly "decloaked" SCB spreadsheets, which were attached to a declaration of one of Brutus's principals. (JA 333). Brutus supported the newspaper's motion (JA 343) and SCB opposed it (JA 346). The government took no position. (JA 342). The district court denied the newspaper's motion. (SPA 23 n.4). The government continues to take no position on that motion in this appeal.

17

of fraud based specifically on the spreadsheet transactions that Brutus claims that it "decloaked" only recently, Brutus cannot justify its lack of diligence in not reviewing those spreadsheets earlier. *See infra* Point A.2.

More fundamentally, Brutus's allegation that the government defrauded the court is entirely unfounded. There is no basis for Brutus's allegation that the government committed fraud when it told the district court that it had comprehensively investigated Brutus's *qui tam* claims, which did not include the "decloaked" information that Brutus claims to have discovered only a decade later. *See infra* Point B.1. Nor has Brutus supplied even a scintilla of evidence of bad faith by the government, as is required for a claim of fraud on the court. *See infra* Point B.2. And even if Brutus had any evidence to support its accusations, they do not amount to fraud on the court, which requires fraud of a type that prevents the court from fairly adjudicating a case. *See* Point B.3.

For similar reasons, Brutus has fallen far short of establishing that it would be entitled to discovery. *See infra* Point C.

For these reasons, the district court's judgment should be affirmed.

# A R G U M E N T

## Standard of Review

This Court reviews a district court's determination that a party has failed to make out a claim of fraud on

18

the court for abuse of discretion. *Marco Destin, Inc. v. Levy*, 111 F.4th 214, 219 (2d Cir. 2024).

## The District Court Correctly Rejected Brutus's Allegations of Fraud on the Court

The district court correctly concluded that Brutus came nowhere near satisfying the formidable burden of making out a viable claim of fraud on the court against the government.[4]

---

[4] Claims of fraud on the court under Rule 60(d)(3) are generally brought as "an independent action" rather than a post-trial motion—hence, "plaintiff" in most cited cases refers to the party alleging fraud and "defendant" to the accused party. Fed. R. Civ. P. 60(d)(3); *see Mazzei v. The Money Store*, 62 F.4th 88, 93 (2d Cir. 2023) (discussing "the elements of an independent action for fraud on the court" (quotation marks omitted)); *Giurca v. Montefiore Health Sys., Inc.*, No. 18 Civ. 11505, 2023 WL 9102694, at *11 (S.D.N.Y. Dec. 21, 2023) ("Assuming, arguendo, that a plaintiff can pursue relief under Rule 60(d)(3) by making a motion in the original action (rather than by filing an independent action) . . . ." (citing *Gleason v. Jandrucko*, 860 F.2d 556, 558 (2d Cir. 1988))), *report and recommendation adopted*, 2024 WL 1193574 (S.D.N.Y. Mar. 20, 2024). Courts thus may construe such motions as initiating independent actions. *See, e.g.*, *Marco Destin*, 111 F.4th at 217.

19

## A.  Brutus Was Not Prevented from Raising Its Fraud Allegations Earlier

As a preliminary matter, to establish "fraud on the court, a plaintiff must prove, by clear and convincing evidence, that the defendant interfered with the judicial system's ability to adjudicate impartially and that the acts of the defendant must have been of such a nature as to have prevented the plaintiff from fully and fairly presenting a case or defense." *Mazzei v. The Money Store*, 62 F.4th 88, 93-94 (2d Cir. 2023). This Court has "consistently held that courts are not prevented from impartially and fairly adjudicating a case where the plaintiff had an adequate opportunity to redress the alleged fraud" during the original litigation. *Id.* at 93-94 ("Other circuits share our unwillingness to find fraud on the court where the alleged fraud could have been redressed in the underlying action." (collecting cases)). This requirement "is consistent with the deference owed to the finality of judgments and respect for the adversarial process." *Id.* at 94-95 ("The important interest in finality is not well served when a losing party can, except in the most exceptional and egregious cases, fail to take advantage of these opportunities and revisit a matter that courts and the parties have understood to have ended.").

A party claiming fraud on the court must therefore demonstrate that it "exercised the required diligence in the [original litigation] and explored avenues of proof available to [it]"; otherwise, courts should conclude it "was not prevented from fully and fairly presenting [its case] and, consequently, [its] fraud on the court claim [i]s properly dismissed." *Id.* at 94. Thus, to

20

prevail on such a claim, a party "must show that the equities tip in favor of relief, . . . such as by demonstrating that its own 'neglect' did not lead to the fraudulent judgment." *Marco Destin*, 111 F.4th at 220; *accord Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 662 (2d Cir. 1997) ("equity will not grant relief if the complaining party has, or by exercising proper diligence would have had, an adequate remedy at law, or by proceedings in the original action to open, vacate, modify, or otherwise obtain relief against, the judgment" (quotation marks and alteration omitted)).

Brutus's argument accordingly fails for two reasons. First, Brutus already litigated—and lost—essentially the same argument earlier in this litigation and is not entitled to a further bite at the apple. And second, Brutus's failure to uncover supposedly new evidence supporting its fraud argument until now is entirely its own doing and was not caused by any government misconduct.

## 1. Brutus Already Litigated, and Lost, Its Allegation of Fraud on the Court

The district court correctly rejected the argument that Brutus has been denied a sufficient opportunity to pursue its allegation that the government committed fraud on the court. (SPA 20). To the contrary, Brutus has already litigated this very accusation several times over the course of this lengthy case, and has lost every time. In the motion at issue in this appeal, Brutus claimed that government declarants fraudulently attested to the comprehensiveness of their investigation, because (in Brutus's view) the government did

21

not review the materials Brutus provided with sufficient diligence to uncover all potentially sanctionable transactions. (Brief for Relator-Appellant ("Br.") at 7-13). Brutus made nearly identical arguments in response to the government's motion to dismiss (Dist. Ct. Dkt. No. 49, at 5 ("[T]he Government could not corroborate [Brutus]'s allegations because it did not examine the massive volume of evidence [Brutus] produced.")), and in its first motion to set aside the judgment (Dist. Ct. Dkt. No. 68, at 8-9 (claiming that "[s]everal declarations by participants in the joint investigation of SCB" describing the scope and conclusions of the Government's investigation were "untrue"); Dist. Ct. Dkt. No. 76, at 2-3 (asserting it was "implausible" that an FBI agent had "closely" examined the materials provided by an SCB employee because the agent had not discovered the information in "hidden cells")).

The district court rejected these arguments. In dismissing Brutus's complaint, the court found that it had "no basis to doubt[ ] that the Government undertook a lengthy, costly, and substantial investigation into [Brutus's] claims." *SCB I*, 2020 WL 3619050, at *4 (quotation marks omitted). And in denying Brutus's motion for an indicative ruling, the district court noted that it "does not and cannot find that a false representation was made" by the government in support of its motion to dismiss. *SCB II*, 2021 WL 4772142, at *6. Brutus renewed these arguments before this Court in the prior appeal, claiming that it had presented evidence that "refuted" the government's declarations and put "[t]he credibility of the Government's declarants" at issue. (Appellant's Brief, No. 20-2578, 2021 WL 6072083, at 29, 32). This Court upheld the district

22

court's determination, concluding that Brutus "ha[d] failed to show that the government's investigation was inadequate, that its decision to dismiss the case was unreasonable, or that its decision was based on arbitrary or improper considerations." *SCB III*, 2023 WL 5344973, at *3. Brutus thus not only had a full opportunity to, but in fact did, litigate this very issue previously. Rule 60(d)(3) does not permit Brutus to do so again.

### 2. Brutus Was Not Diligent in Identifying Supposedly New Evidence and Was Not Prevented from Doing So by the Government

Even if Brutus could establish that its present motion is based on supposedly newly discovered evidence and therefore differs sufficiently from its previous allegation of fraud on the court, the district court correctly concluded that relief would be unwarranted because of Brutus's lack of diligence in identifying this evidence. (SPA 20-21). The allegedly newly discovered evidence is "undisclosed data caches" embedded in "hidden pivot tables" in the spreadsheets Brutus provided the government in 2012 and 2013. (Br. 14 (citing JA 149 n.8, 235 n.1)). Though it maintained possession of these spreadsheets for the intervening decade, Brutus claims to have "decloaked" this "hidden" data only in 2023, with the assistance of an "intelligence analyst and forensic investigator." (Br. 14). Brutus does not explain how the allegedly newly identified spreadsheet data differs from what Brutus previously characterized as the "hidden" data in the same spreadsheets, which it first accused the government of not

23

sufficiently reviewing in January 2021 (Dist. Ct. Dkt. No. 76, at 2-3), or why any such difference is significant.

More importantly, Brutus fails to justify its lack of diligence in waiting until 2023 to examine these spreadsheets more closely. The litigation over the government's motion to dismiss and Brutus's first motion to set aside the judgment took place years earlier, between 2019 and 2021; and the government investigated Brutus's False Claims Act allegations in 2012 and 2013. Brutus's only excuse for failing to identify the supposed evidence it now points to is that its members "were unfamiliar with the ability of the Excel spreadsheet program to embed undisclosed data caches using hidden pivot tables" and were unable to access this data without the assistance of an investigator. (Br. 14). But Brutus does not explain why it could not have worked with a similar investigator earlier if it wished to more thoroughly examine these spreadsheets. *See Mazzei*, 62 F.4th at 94 (claim of fraud on the court must be dismissed if plaintiff failed to "exercise[] the required diligence in the [original litigation] and explore[] avenues of proof available to [it]"); *see also U.S. Steel v. M. DeMatteo Construction Co.*, 315 F.3d 43, 52 (1st Cir. 2002) ("A party seeking relief from a judgment based on newly discovered evidence must at the very least, offer a convincing explanation as to why he could not have proffered the crucial evidence at an earlier stage of the proceedings."; rejecting "protestations of inadequate time and overwhelming volume" (quotation marks omitted)). Brutus's belated engagement of an investigator may have led it to a different "appreciation of the significance" of

24

the evidence it had all along, but that does not make it "newly discovered." *United States v. Cimera*, 459 F.3d 452, 460 & n.10 (3d Cir. 2006) ("where the defendant had possession of the evidence at the time of trial, his failure to realize its relevance will not render that evidence 'newly discovered' ").

And even if Brutus could identify some factor that delayed its review of these spreadsheets, it has not presented "clear and convincing evidence," as it must, that the *government* prevented Brutus from analyzing the spreadsheets earlier. *Mazzei*, 62 F.4th at 93-94. Nor could it. After all, Brutus provided these spreadsheets to the government and has maintained copies ever since. The government never prevented Brutus from conducting any analysis it wished to conduct on these spreadsheets. *See id.* at 94 (defendant did not "prevent[ ]" plaintiff "from fully and fairly presenting his case . . . and, consequently, his fraud on the court claim [i]s properly dismissed"); *id.* ("[H]ad [plaintiff] exercised the required diligence in the prior action and explored avenues of proof available to him, either the alleged falsity of defendants' misstatements would have been uncovered, or he would have been able to offer proof at trial from alternate sources."); *Marco Destin*, 111 F.4th at 220 (affirming dismissal of claim of fraud on the court because the plaintiff "had a reasonable opportunity to uncover the fraud during the underlying action").

Here, where there is no allegation, let alone "clear and convincing evidence," that the government did anything to prevent Brutus from reviewing the spreadsheets more closely earlier, and Brutus could have

25

timely, with reasonable diligence, uncovered any data it wished to bring to the government's attention—"hidden," "cloaked," or otherwise—relief under Rule 60(d)(3) is unavailable.

## B. Brutus Has Not Established Any Fraud on the Court

Even if Brutus had exercised sufficient diligence, its claim of fraud on the court would still fail, as the district court correctly concluded. (SPA 19-20). "Rule 60(d) actions are warranted only when necessary 'to prevent a grave miscarriage of justice.'" (SPA 18 (quoting *United States v. Beggerly*, 524 U.S. 38, 47 (1998); some quotation marks omitted). "To meet the Rule's stringent and narrow requirements for relief, the movant must show, by clear and convincing evidence, that the fraud seriously affects the integrity of the normal process of adjudication, and that the fraud, misrepresentation or conduct actually deceived the court." (SPA 18 (quotation marks and alteration omitted)); *accord King v. First American Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002) (noting "narrow[ ] ... scope" of fraud-on-the-court claims (quotation marks omitted)). "In other words, fraud under Rule 60(d) entails conduct 'which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court.'" (SPA 18 (quoting *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995))); *accord King*, 287 F.3d at 95. Among other things, a party alleging fraud on the court must show "clear and convincing evidence of bad faith" by its adversary. *Mazzei*, 62 F.4th at 95; *King*, 287 F.3d at 95.

26

### 1. Brutus's Claim of Fraud Are Belied by the Factual Record

Brutus's allegations of fraud fail for three independent reasons. First, they are based on a fundamental misunderstanding of the scope of the government's investigation of Brutus's allegations in 2012 and 2013. Brutus asserts without any basis that the transactions it uncovered by "decloaking" the spreadsheets were reviewed by the government during its investigation, and that government declarants lied to the district court when they reported the results of that investigation. (Br. 28 ("To dismiss this case, the Government Declarants insisted that the Brutus Data contained no evidence of SCB's post-2007 violations of Iran sanctions.")). But the government clearly, and repeatedly, told the district court that as part of its investigation of Brutus's *qui tam* complaint, the government reviewed only a small portion of the transactions on the SCB spreadsheets provided by Brutus.

Brutus's *qui tam* complaint alleged that SCB improperly continued to engage in sanctions-violative transactions with its known Iranian clients after 2007. (JA 42-43; Dist. Ct. Dkt. No. 32-2, ¶¶ 25-34). As part of its submission to the government, Brutus identified specific known Iranian banks, government offices, and companies on the spreadsheets it provided and pointed to particular Bank transactions with those entities. (JA 42-44, 70, 110-12; Dist. Ct. Dkt. No. 61-2, ¶¶ 24-33, 36(F)-(U)). The government exhaustively examined the Bank's transactions with only those types of entities as part of its investigation, and determined that

27

they did not violate sanctions rules. (JA 45-48, 54-55, 71-72, 88-91).[5]

The government never reviewed or claimed to have reviewed the thousands upon thousands of other transactions in the spreadsheets at issue line by line, nor would such a review have made sense in light of the scope of the investigation. (JA 24 ("[Brutus] did not suggest that the U.S. government should investigate the thousands of seemingly legitimate non-Iranian, [United Arab Emirates]-based customers of SCB's Dubai branch that were also listed in the documents it produced to see if they had any undisclosed Iranian connections, nor would it have been within the reasonable scope of the investigation into [Brutus's] claims for the U.S. government to do so."); JA 131 n.5 ("[T]he mere fact that certain ... entities ... appear among thousands of others in the lengthy [SCB] client lists or transaction registers provided by [Brutus], without evidence from [Brutus] of an improper Iranian affiliation, would not have led OFAC to investigate all transactions involving each such non-Iranian entity in [*sic*] the off-chance that an Iranian sanctions violation might be found. Nor would such an investigation have been reasonable given the information actually

_____

[5] Among other things, the government concluded that most of the Bank's post-2007 transactions with those Iranian customers were transactions winding down their pre-2007 client relationships in currencies other than U.S. dollars, or otherwise in compliance with contemporaneous sanctions rules. (JA 46 & n.2, 70-71).

28

provided by [Brutus], which was far more specific—
and was thoroughly investigated.")).

As for "hidden" data in the spreadsheets, the lead
FBI agent told the district court that Brutus had not,
during the investigation, "indicate[d] to [the govern-
ment] that any of the SCB spreadsheets [Brutus] pro-
vided contained 'hidden' columns or data," but he later
—during the briefing on the government's motion to
dismiss—"re-reviewed these documents, including all
'hidden' information [he] could locate, and did not see
any additional material information that would have
been relevant to [the government's] investigation, such
as information suggesting that any entities other than
those [Brutus] brought to our attention at the time
were Iranian." (JA 55 n.3).

Brutus's argument that the government misrepre-
sented the results of its investigation to the district
court (Br. 28-31) thus depends on an inaccurate prem-
ise: that the government purported to have compre-
hensively reviewed every item in the SCB spread-
sheets and conclusively determined that none of the
transactions reflected there violated any sanctions
rules. The government never represented or suggested
it had done so. In particular, the government never
stated or suggested that it reviewed the "cloaked" data
that Brutus says it recently discovered. Similarly, dur-
ing the litigation on the government's 2019 motion to
dismiss, Brutus brought up new alleged sanctions vio-
lations that it claims to have identified in "hidden"
SCB data, but did not raise during the government's
2013 investigation. (JA 128-31, 133-35, 137). The gov-
ernment explained to the court that it had not

29

reviewed these transactions during its investigation. (JA 131, 133 ("[N]one of these entities appear to have been identified as subject to sanctions by [Brutus] in their communications with the Government in 2012 and 2013.")).[6]

The district court thus correctly concluded that Brutus "has not ... given any basis to discredit [the government's] representations." (SPA 20).

### 2. Brutus Has No Evidence of Government Bad Faith

Another missing element from Brutus's fraud-on-the-court claim is any evidence—let alone clear and

_____

[6]  As noted above, the government did then review those transactions in response to Brutus's late-arriving allegation, and determined that these transactions did not appear to involve Iranian companies or other entities subject to Iran sanctions. (JA 131-33, 135-36, 138-39). Despite that, and despite exhaustive explanations from OFAC (the agency that enforces the sanctions rules) (*e.g.*, JA 82-88, 131-32), Brutus continued to incorrectly insist throughout the briefing on the government's motion to dismiss that the SCB transactions the government actually did review in its investigation violated sanctions rules.

As for transactions Brutus claims it recently "decloaked," Brutus's brief to this Court proclaims that the government has "admi[tted]" its "misconduct" and does not "dispute" the accuracy of Brutus's new allegations (Br. 29-30), but that is not true.

30

convincing evidence—of fraudulent intent by the government. "The law of this Circuit requires, as an element of a [fraud on the court] claim, clear and convincing evidence of bad faith." *Mazzei*, 62 F.4th at 95. "To survive a motion to dismiss, a complaint alleging fraud [on the court] must 'allege facts that give rise to a strong inference of fraudulent intent.' An inference of fraudulent intent 'may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Space Hunters, Inc. v. United States*, 500 F. App'x 76, 78-79 (2d Cir. 2012) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); citation omitted). "'Mere general allegations that there was fraud, corruption or conspiracy or characterizations of acts or conduct in these terms are not enough to survive [dismissal] no matter how frequently repeated.'" *Id.* (quoting *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972); alteration omitted); *accord Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1267 (10th Cir. 1995) ("'fraud on the court' . . . requires a showing that one has acted with an intent to deceive or defraud the court. . . . [It is] essential that there be a showing of conscious wrongdoing—what can properly be characterized as a deliberate scheme to defraud—before relief from a final judgment is appropriate . . . . Thus, when there is no intent to deceive, the fact that misrepresentations were made to a court is not of itself a sufficient basis for setting aside a judgment under the guise of 'fraud on the court.'").

31

Brutus's brief to this Court (Br. 31-37), like its submissions to the district court, contains nothing but speculation about fraud by the government, but cites no evidence of any fraudulent intent. Brutus first claims that the "enormity of the Government's [supposed] misrepresentation" suggests fraudulent intent —in other words, the government told the district court that it found no evidence of sanctions violations; Brutus now insists there were massive "decloaked" violations; therefore, the government acted with fraudulent intent. (Br. 32). That circular inference is unsupportable. As explained above, the government investigated the allegations Brutus made at the time in its *qui tam* complaint, and correctly reported to the district court that it had found no violations of sanctions. Similarly, Brutus asserts that the government's investigation "disregard[ed] signs of fraud so obvious that it must have been aware of them" (Br. 32 (quotation marks and alteration omitted))—yet Brutus at the time never pointed to the "obvious" violations, and the government's investigation found no such signs.

Despite having no evidence whatsoever of any false statement by the government to any court, Brutus improperly and inaccurately suggests that the government violated its duty of candor to the district court by "denying the existence of SCB's cloaked illegal transactions." (Br. 34). As reviewed above, the government declarants never discussed these transactions in their court submissions and likely never saw them at all—a natural consequence of the scope of the investigation and the fact that Brutus was itself not aware of (and did not identify for the government's investigators) these alleged transactions until years after the fact.

32

The government thoroughly reviewed the allegations that were presented to it, and later presented its conclusions about those allegations to the district court. Any suggestion that that constitutes misconduct is entirely baseless.

Finally, relying on a Senate staff report concerning Iran,[7] but otherwise unrelated to the allegations in this case, Brutus speculates (for the first time on appeal) that the government's investigation in this case might have been tainted by political pressure surrounding the United States' negotiation of a nuclear deal with Iran in 2015 and 2016. (Br. 35-37). Again, Brutus's conclusions are unfounded—indeed, it relies not on evidence, but on what it self-servingly deems "not at all far-fetched to ask." (Br. 37). The record, however, says otherwise: the government's investigation of Brutus's allegations was in 2012 and 2013, several years before the period covered by the staff report, and was followed by an unrelated multiyear investigation of SCB that resulted in a record set of penalties and fines against the Bank in 2019 for violations of Iran sanctions. (JA 50, 76-77, 97-98, 102-03; *see* JA 33 (noting that SCB paid a total of $1.1 billion to resolve these investigations)). Brutus has presented

—————

[7] Brutus refers to the report as the "Senate Judiciary Report," and characterizes its findings as those of "the Senate Judiciary Committee" (Br. 36-37), but that is inaccurate; a report by a majority staff is not the same as a report by a Senate Committee itself.

33

absolutely no evidence for its baseless innuendo of bad faith by the government.

### 3. Brutus's Allegations Do Not Amount to Fraud on the Court

Finally, even if Brutus's allegations had any merit, the conduct it alleges would not amount to fraud on the court, which requires a showing that "the defendant interfered with the judicial system's ability to adjudicate impartially and that the acts of the defendant must have been of such a nature as to have prevented the plaintiff from fully and fairly presenting a case or defense." *Mazzei*, 62 F.4th at 93-94. For example, "bribing a judge, tampering with a jury, and hiring an attorney for the purpose of influencing a judge are examples of fraud upon the court," but neither allegations of "nondisclosure during pretrial discovery" nor "after-discovered evidence of alleged perjury by a witness or other fabricated evidence" is enough. *LinkCo, Inc. v. Akikusa*, 615 F. Supp. 2d 130, 135 (S.D.N.Y. 2009) (quotation marks and alteration omitted). The alleged fraud here—the government's supposed failure to review carefully enough (in Brutus's view) certain materials, or a supposed exaggeration (again, in Brutus's view) of the comprehensiveness of the government's investigation—falls far short of this standard.

Such a claim is particularly wide of the mark in FCA cases, in which the government enjoys broad discretion to dismiss relators' claims. *See United States ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419, 437-38 (2023) ("in this context, the Government's views are entitled to substantial deference");

34

*SCB III*, 2023 WL 5344973, at *2. Courts have thus easily rejected arguments by relators that the government committed fraud on the court in exercising its dismissal rights, especially when the supposed fraud is little more than criticism of the outcome of the government investigation. *See Borzilleri v. Bayer Healthcare Pharmaceuticals, Inc.*, 24 F.4th 32, 45-46 (1st Cir. 2022) (rejecting relator's argument that the government committed "investigative fraud" on the court, in that "the government should have further pursued, rather than dismissed, what [relator] saw as a promising qui tam action potentially worth billions of dollars," as "no more than [relator's] disagreements with the government's judgment about the contours of the investigation and its potential for success"); *Davis v. HHS*, 968 F. Supp. 2d 176, 182-85 (D.D.C. 2013) (dismissing relator's claim of fraud on the court based on allegation that "federal government attorneys had in their possession information and materials substantiating [relator's FCA] claims and yet they did not disclose such information and materials to the court," because it does not "allege any improper influence directed at the judicial machinery itself" (quotation marks omitted)), *aff'd*, No. 13-5294, 2014 WL 2178705 (D.C. Cir. Apr. 25, 2014); *Ballew v. DOJ*, No. 99-11308, 2000 WL 1901696, at *3 (5th Cir. Dec. 15, 2000) (affirming denial of relator's fraud-on-the-court claim based on allegation that "DOJ attorneys conspired with the [Coast Guard] (and the defendants in the underlying *Qui Tam*) to mislead the court as to the true nature, extent and value of the underlying *Qui Tam* settlement proceeds" because relator "has failed to

35

allege an attack on the integrity of the judicial process itself " (quotation marks omitted)).

## C. Brutus Has Not Made a "Substantial Threshold Showing" Justifying Discovery

The district court correctly concluded that no discovery was necessary or appropriate before rejecting Brutus's effort to disturb the final judgment of dismissal. (SPA 22). Courts have articulated varying threshold standards to decide whether a litigant claiming fraud on the court is entitled to discovery; in the prior appeal of this case, this Court followed the First Circuit's approach, which requires a False Claims Act relator who "seeks discovery to establish" government fraud on the court to first make "a substantial threshold showing to support his claims." *Borzilleri*, 24 F.4th at 44, *cited with approval in SCB III*, 2023 WL 5344973, at *3. Regardless of the precise standard, no discovery is warranted given that Brutus has made no showing at all to warrant discovery.

As discussed above, Brutus has repeatedly accused the government of fraud over the course of this lengthy litigation—the supposed fraud being that the government did not independently uncover during its investigation supposedly problematic transactions on the SCB spreadsheets that Brutus did not identify to the government in its *qui tam* complaint or otherwise. The district court and this Court have rejected the very notion that this is anything approaching fraud. *See SCB III*, 2023 WL 5344973, at *3 ("Brutus's arguments boil down to nothing more than a 'subjective disagreement' with the government's investigation and

its ultimate decision as to Brutus's claims. Brutus has failed to show that the government's investigation was inadequate, that its decision to dismiss the case was unreasonable, or that its decision was based on arbitrary or improper considerations." (quoting *SCB I*, 2020 WL 3619050, at *4)); *SCB II*, 2021 WL 4772142, at *6 (Brutus "fail[ed] to establish any requirement of Rule 60(b)(3) and 60(d)(3) for fraud" because it "cannot show, let alone by clear and convincing evidence," any "material representations that impeded [it] from presenting its case, or that the Court was deceived, and the integrity of its processes affected, by false representations," nor has Brutus "demonstrated that the Court's decision to dismiss [its] claims was the product of any misrepresentation whatsoever."). Discovery would not change that.

Because Brutus's accusations would not amount to fraud on the court even if proven, and because the only supposed evidence of the latest fraud accusation is its 2023 re-analysis of the SCB spreadsheets it provided the government in 2012 and 2013, Brutus falls far short of the "substantial threshold showing" needed to justify discovery.[8]

———

[8]    While no remand is warranted, Brutus fails to justify the "extreme remedy, rarely imposed" of reassignment to a new judge. *United States v. City of New York*, 717 F.3d 72, 99 (2d. Cir. 2013); *accord United States v. Awadallah*, 436 F.3d 125, 135 (2d Cir. 2006). Brutus points to nothing more than the district court's criticism of its tactics and candid assessment of the

37

---

merits of its motion and its course of conduct through-
out these extended proceedings (Br. 50-51), which is
far short of a sufficient basis to reassign this matter.
*See Liteky v. United States*, 510 U.S. 540, 555 (1994)
("[J]udicial rulings alone almost never constitute a
valid basis for a bias or partiality motion. . . . [O]pin-
ions formed by the judge on the basis of facts intro-
duced or events occurring in the course of the current
proceedings, or of prior proceedings, do not constitute
a basis for a bias or partiality motion unless they dis-
play a deep-seated favoritism or antagonism that
would make fair judgment impossible. Thus, judicial
remarks during the course of a trial that are critical or
disapproving of, or even hostile to, counsel, the parties,
or their cases, ordinarily do not support a bias or par-
tiality challenge.").

38

## CONCLUSION

**The order of the district court should be affirmed.**

Dated:     New York, New York
           August 21, 2025

                    Respectfully submitted,

                    JAY CLAYTON,
                    *United States Attorney for the*
                    *Southern District of New York,*
                    *Attorney for Interested Party-*
                         *Appellee the United States.*

JEAN-DAVID BARNEA,
BENJAMIN H. TORRANCE,
     *Assistant United States Attorneys,*
          *Of Counsel.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure and this Court's Local Rules. As measured by the word processing system used to prepare this brief, there are 8765 words in this brief.

JAY CLAYTON,
*United States Attorney for the*
*Southern District of New York*

By: JEAN-DAVID BARNEA,
*Assistant United States Attorney*